UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

IBRAHIM T. WAKIM,

                              Plaintiff,

            -against-

MICHAEL CETTA, INC. d/b/a SPARKS
STEAKHOUSE and MICHAEL CETTA,

                        Defendants.

------------------------------------------------------------------------ x

:
:
:
:
:
:
:
:
:
:
:

10 Civ. 0518 (PAC) (GWG)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>MOTION FOR PARTIAL RECONSIDERATION</u>

**Duval & Stachenfeld LLP**
**101 Park Avenue, Eleventh Floor**
**New York, New York 10178**
**Attorneys for Defendants**

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

LEGAL STANDARD APPLICABLE TO A MOTION FOR RECONSIDERATION ................. 3

ARGUMENT .............................................................................................................. 4

    A.  THE PASSAGE OF THREE YEARS BETWEEN SPARKS' KNOWLEDGE OF
       PLAINTIFF'S PARTICIPATION IN A "PROTECTED ACTIVITY" AND THE
       ALLEGEDLY "ADVERSE EMPLOYMENT ACTION" TAKEN BY SPARKS
       NECESSARILY MEANS THAT THE TWO EVENTS ARE "SEPARATE AND
       UNRELATED" AS A MATTER OF LAW ........................................................... 4

    B.  THE COURT ERRED BY MEASURING CAUSALITY FROM A
       PURPORTED REASSIGNMENT IN OCTOBER 2006, WHICH
       REASSIGNMENT WAS RESCINDED AND, THEREFORE, WAS NOT
       THE ADVERSE EMPLOYMENT ACTION FROM WHICH
       TEMPORAL PROXIMITY IS TO BE MEASURED FOR PLAINTIFF'S
       RETALIATION CLAIMS ................................................................................ 7

         1.  The Purported Reassignment in October 2006 Does Not Constitute an
           "Adverse" Employment Action and, Therefore, Should Not Have Been
           Used as the Date for Measuring Temporal Proximity of the Retaliation
           Claims ............................................................................................... 8

         2.  Even if the Purported Reassignment in October 2006 Can be Deemed
           "Adverse," it is Not the Action for which Wakim Seeks Relief and,
           Therefore, Should Not Have Been Used as the Date for Measuring
           Temporal Proximity of the Retaliation Claims .......................................... 10

         3.  Even if the Purported Reassignment in October 2006 Can be Deemed
           "Adverse," and is the Adverse Action for which Wakim Seeks Relief,
           Any Claim Based on the Purported Reassignment Would Be Time-
           Barred ............................................................................................... 11

         4.  If the Decision is Not Corrected and the Date for Measuring Temporal
           Proximity of the Retaliation Claims is a Reassignment Which
           Indisputably Was Never Implemented, then the Court Has Effectively
           Tolled the Retaliation Claims Indefinitely and Divested Sparks from
           the Right to Manage Its Employees and Its Business .................................. 12

    C.  THE SEPTEMBER 2009 ROTATION POLICY DID NOT TARGET
       WAKIM, BUT APPLIED TO DOZENS OF WAIT STAFF AT SPARKS,
       AND, THEREFORE, WAS NOT RETALIATORY AS A MATTER OF
       LAW .................................................................................................... 13

i

**Page**

   D.  EVEN IF WAKIM COULD ESTABLISH A PRIMA FACIE CASE OF
       RETALIATION, A LEGITIMATE NONDISCRIMINATORY
       BUSINESS PURPOSE SUPPORTED THE IMPLEMENTATION OF
       THE SEPTEMBER 2009 ROTATION SYSTEM ...........................................................14

CONCLUSION.....................................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

Beachum v. AWISCO N.Y. Local 810,
    785 F. Supp. 2d 84 (S.D.N.Y. 2011),
    aff'd, No. 11-1412-cv, 2012 U.S. App. LEXIS 2996 (2d Cir. 2012) .................................5

Brandon v. City of New York,
    705 F. Supp. 2d 261 (S.D.N.Y. 2010)...............................................................................11

Clark Cnty. Sch. Dist. v. Breeden,
    532 U.S. 268 (2001)...............................................................................................6 n 3

Dao v. Oppenheimer Funds, Inc.,
    No. 10 Civ. 8413 (KBF), 2012 U.S. Dist. LEXIS 67731, (S.D.N.Y May 2, 2012) ...........5

De La Cruz v. City of New York,
    783 F. Supp. 2d 622 (S.D.N.Y 2011)...................................................................................5

Freilich v. Bd. of Dirs. of Upper Chesapeake Health, Inc.,
    142 F. Supp. 2d 679 (D. Md. 2001),
    aff'd, 313 F.3d 205 (4th Cir. 2002).....................................................................................12

Gomez v. Pellicone,
    986 F. Supp. 220 (S.D.N.Y. 1997)......................................................................................13

Heffernan v. Straub,
    655 F. Supp. 2d 378 (S.D.N.Y. 2009) ..................................................................................3

Henkin v. Forest Labs,
    No. 01 Civ. 4255 (AKH), 2003 U.S. Dist. LEXIS 3060 (S.D.N.Y. Mar. 5, 2003),
    aff'd, 88 Fed. Appx. 478 (2d Cir. 2004).   .......................................................................15

Hollander v. Am. Cyanamid Co.,
    895 F.2d 80 (2d Cir. 1990)....................................................................................................5

In re Eaton Vance Mut. Funds Fee Litig.,
    403 F. Supp. 2d 310 (S.D.N.Y. 2005),
    aff'd, 481 F.3d 110 (2d Cir. 2007).......................................................................................3

Kraemer v. Elmira Auto Paint Supplies,
    903 F. Supp. 315 (N.D.N.Y. 1995).....................................................................................10

Marshall v. N.Y. City Bd. of Elections,
    322 Fed. Appx. 17 (2d Cir. 2009).........................................................................................8

Mayo v. Cnty. of Albany,
    357 Fed. Appx. 339 (2d Cir. 2009).....................................................................................10

Muhammad v. Juicy Couture/Liz Claiborne, Inc.,
    No. 09 Civ. 8978(PAC)(THK), 2010 U.S. Dist. LEXIS 108343, (S.D.N.Y. 2010)...........6

iii

**Page**

Mullins v. City of New York,
        626 F.3d 47 (2d Cir. 2010)...................................................................................4, 8, 9, 14

Murray v. Visiting Nurse Servs.,
        528 F. Supp. 2d 257 (S.D.N.Y. 2007)...................................................................................6

Neratko v. Frank,
        31 F. Supp. 2d 270 (W.D.N.Y. 1998) ..................................................................................13

Perry v. NYSARC, Inc.,
        424 Fed. Appx. 23 (2d Cir. 2011) .........................................................................................5

Reilly v. Natwest Mkts. Grp., Inc.,
        178 F. Supp. 2d 420 (S.D.N.Y. 2002)..................................................................................11

Richards-Byers v. New York Dep't of Fin.,
        449 Fed. Appx. 55 (2d Cir. 2011) .........................................................................................5

Ross-Caleb v. City of Rochester,
        No. 08-CV-6548, 2011 U.S. Dist. LEXIS 144348 (W.D.N.Y. Dec. 15, 2011)..............8, 9

Schiano v. Quality Payroll Sys.,
        445 F.3d 597 (2d Cir. 2006).............................................................................................8, 9

Smiley v. Cassano,
        No. 10 Civ. 3866 (RJS), 2012 U.S. Dist LEXIS 39615, (S.D.N.Y. Mar. 21, 2012) .......5, 6

Stavis v. GFK Holding, Inc.,
        769 F. Supp. 2d 330 (S.D.N.Y. 2011)...................................................................................6

Torres v. Gristede's Operating Corp.,
        628 F. Supp. 2d 447 (S.D.N.Y. 2008)...................................................................................5

Webber v. Int'l Paper Co.,
        417 F.3d 229 (1st Cir. 2005)...............................................................................................16

White v. New Hampshire Dep't of Emp't Sec.,
        455 U.S. 445 (1982) .............................................................................................................3

Yerdon v. Henry,
        91 F.3d 370 (2d Cir. 1996)....................................................................................................9

Yu G. Ke v. Saigon Grill, Inc.,
        595 F. Supp. 2d 240 (S.D.N.Y. 2008).................................................................................11

## RULES AND STATUTES

29 U.S.C. § 202 (2012) ...............................................................................................................12

29 U.S.C. § 255 (2012) ...............................................................................................................11

**Page**

Fed. R. Civ. P. 59(e) ......................................................................................................1, 3

New York Labor Law § 215 ...............................................................................................11

S.D.N.Y. Local Rule 6.3 ...................................................................................................1, 3

Defendants Michael Cetta, Inc. d/b/a Sparks Steakhouse, Inc. and Michael Cetta (collectively, "Sparks"), by their attorneys, Duval & Stachenfeld LLP, respectfully submit this memorandum of law in support of their motion for partial reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Rules of the Southern District of New York.  The motion seeks partial reconsideration of the Decision & Order entered May 17, 2012 (the "Decision"), to the extent it denied Sparks' motion for summary judgment (the "Motion") on the third and fourth causes of action alleging retaliation under the Federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") brought by Plaintiff Ibrahim T. Wakim ("Wakim" or "Plaintiff").[1]

## PRELIMINARY STATEMENT

Sparks respectfully seeks partial reconsideration of the Decision because, it submits, certain manifest errors of law were made by the Court in connection with the adjudication of Plaintiff's third and fourth causes of action alleging retaliation which, if uncorrected, will constitute a manifest injustice to Sparks.

First, the Court incorrectly held that Plaintiff can show the necessary causal link between the protected activity -- i.e., Sparks' knowledge of Wakim's participation in the Wage and Hour Lawsuit in September 2006 -- and the purportedly adverse employment action complained of here -- which occurred three years later -- i.e., the September 2009 rotation policy.  Decision at 15.  In reaching this result, the Court necessarily disregarded the passage of three years during

---

[1]   The exhibits cited herein are those annexed to the previously submitted April 29, 2011 Declaration of Timothy J. Pastore.  References to Plaintiff's Rule 56.1 Counterstatement of Material Facts shall be as follows: "Pl's Rule 56.1 Counterstatement ¶ ___."  References to Sparks' April 29, 2011 Memorandum of Law in Support of Summary Judgment shall be as follows: "Mem. of Law, at ___."  References to Plaintiff's June 3, 2011 Memorandum of Law in Opposition to Sparks' Motion for Summary Judgment shall be as follows: "Pl's Mem. of Law, at ___."  References to the June 3, 2011 Declaration of Louis Pechman shall be as follows: Pechman Decl. Ex. ___, at ___."

Unless otherwise expressly defined herein, all capitalized terms shall have the same meaning as those defined in the papers submitted with the underlying Motion.  The arguments made, facts described, and exhibits submitted with the underlying Motion are hereby incorporated by reference.

which Wakim worked uninterrupted as a runner.  Instead, the Court concluded that "it cannot be said that the two events [in 2006 and 2009] are separate and unrelated."  Id.  We respectfully submit that this is an error of law and contrary to dozens of cases in the Second Circuit, which consistently hold that the passage of two to three months -- let alone three years -- "does not allow for an inference of causation" as a matter of law.  In other words, a three year lapse of time necessarily means that the two events are separate and unrelated as a matter of law.

Second, the Court respectfully erred in using the incorrect measuring date for determining the temporal proximity of Wakim's retaliation claims.  Decision at 15.  In particular, the Court erred in holding that the adverse employment action from which temporal proximity must be measured was the purported reassignment of Wakim from runner to front waiter in October 2006.  Id.  Yet, that purported reassignment -- which was rescinded and never implemented -- cannot be the measuring date for temporal proximity because:  (1) it is not an adverse employment action as matter of law; (2) it is not the adverse employment action for which Wakim seeks a remedy; (3) it is statutorily time-barred; and (4) to hold otherwise would effectively toll Wakim's retaliation claim indefinitely.  Instead, the correct measure, as a matter of law, is the three year period from September 2006 (when Spark's learned of Wakim's participation in the Wage and Hour Lawsuit) to September 2009 (when the allegedly adverse rotation policy was implemented at Sparks).  Any contrary finding measures the wrong events and, therefore, constitutes an error of law.

Third, the Court erred in holding that the restaurant-wide rotation policy adopted by Sparks in September 2009 constituted actionable, retaliatory conduct -- despite the undisputed fact that the rotation policy applied to dozens of other wait staff and did not target Wakim.  This contradicts well-settled law that an employment action is not retaliatory where it is applied as a general policy -- as was the case with the rotation system adopted in September 2009.

2

Fourth, the Court erred in finding that Sparks did not implement the rotation policy for a legitimate business reason.  In particular, the Court rested its finding on the opinion of one employee -- whose testimony was taken out of context and not considered with other evidence in the record.  As a matter of law, the opinion of one employee as to the short term operational efficacy of the rotation policy cannot be the basis upon which the Court determines that Sparks did not have a legitimate, non-discriminatory business purpose when implementing the rotation policy in 2009.

For the reasons set forth herein and in the underlying Motion papers, Sparks respectfully requests that the Court reconsider its Decision and grant Sparks' motion for summary judgment dismissing Plaintiff's third and fourth claims for retaliation.

## LEGAL STANDARD APPLICABLE TO A MOTION FOR RECONSIDERATION

Motions for reconsideration in the U.S. District Court for the Southern District of New York are governed by Local Rule 6.3 and are subject to the same standards as motions to amend a judgment under Fed. R. Civ. P. 59(e).  White v. New Hampshire Dep't of Emp't Sec., 455 U.S. 445, 450 (1982) (Rule 59(e) was adopted to make "clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment") (citation and internal quotation marks omitted); see In re Eaton Vance Mut. Funds Fee Litig., 403 F. Supp. 2d 310, 313 (S.D.N.Y. 2005), aff'd, 481 F.3d 110 (2d Cir. 2007).  A motion for reconsideration is properly granted once it has been determined that the court misapprehended controlling law or pertinent facts.  See e.g. Heffernan v. Straub, 655 F. Supp. 2d 378, 381-82 (S.D.N.Y. 2009) (granting reconsideration and dismissing retaliation claim for lack of causation).

Sparks respectfully submits that the Decision contains factual and legal errors which, if uncorrected, will constitute a manifest injustice to Sparks.[2]

## ARGUMENT

**A.   THE PASSAGE OF THREE YEARS BETWEEN SPARKS' KNOWLEDGE OF PLAINTIFF'S PARTICIPATION IN A "PROTECTED ACTIVITY" AND THE ALLEGEDLY "ADVERSE EMPLOYMENT ACTION" TAKEN BY SPARKS NECESSARILY MEANS THAT THE TWO EVENTS ARE "SEPARATE  AND UNRELATED" AS A MATTER OF LAW**

In denying summary judgment on Plaintiff's two retaliation claims, the Court rejected Sparks' argument that Plaintiff failed, as a matter of law, to show the necessary causal link between the protected activity -- i.e., Wakim's participation in the Wage and Hour Lawsuit in September 2006 -- and the purportedly adverse employment action complained of -- i.e., the September 2009 restaurant-wide policy requiring all wait staff to rotate between the position of runner and front waiter.  Decision at 15.  In reaching this result, the Court concluded that, although separated by three years, "it cannot be said that the two events are separate and unrelated."  Id.  It is respectfully submitted, however, that as a matter of well-settled law, the two events are separate and unrelated, because of the passage of three years between them.

As set forth in the Decision, Plaintiff was required to meet three elements to establish a *prima facie* case of retaliation: (1) participation in a protected activity; (2) an adverse employment action that disadvantaged him; and (3) a causal connection between the two. Decision at 14 (citing Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010)).  As the Court correctly noted in the Decision, the establishment of the third element is typically shown by proof of "'a close temporal proximity between the protected activity and the adverse

---

[2]   The legal arguments raised in this motion for reconsideration are properly before the Court, as they have been previously raised in Sparks' moving papers submitted in support of summary judgment.  See Mem. of Law, at 17-19.  Moreover, all factual citations herein were previously before the Court in the underlying Motion.

employment action.'"  Decision at 14 (quoting <u>Torres v. Gristedes Operating Corp.</u>, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008)).

The Second Circuit has "consistently held that the passage of <u>two</u> <u>to</u> <u>three</u> <u>months</u> between the protected activity and the adverse employment action <u>does</u> <u>not</u> <u>allow</u> for an inference of causation."  <u>Beachum v. AWISCO N.Y. Local 810</u>, 785 F. Supp. 2d 84, 98-99 (S.D.N.Y. 2011) (emphasis added), <u>aff'd</u>, No. 11-1412-cv, 2012 U.S. App. LEXIS 2996 (2d Cir. 2012);  <u>see also</u> <u>De La Cruz v. City of New York</u>, 783 F. Supp. 2d 622, 647 (S.D.N.Y. 2011) ("[t]hough there is no bright line establishing temporal proximity, <u>two</u> <u>months</u> between the protected activity and the adverse employment action seems to be the dividing line") (emphasis added) (citation and internal quotation marks omitted).

Courts in this Circuit repeatedly and consistently have dismissed retaliation claims where, as is the case here, the temporal period between the two measuring events was longer than two to three months.  <u>See</u> <u>e.g.</u> <u>Richards-Byers v. New York Dep't of Fin.</u>, 449 Fed. Appx. 55, 57 (2d Cir. 2011) (claimed adverse employment action that "occurred more than a year" after the protected activity held non-actionable); <u>Perry v. NYSARC, Inc.</u>, 424 Fed. Appx. 23, 26 (2d Cir. 2011) ("a causal connection cannot plausibly be inferred in this case because . . . an eleven-month interval separates Perry's protected activity and the first action of alleged retaliation"); <u>Hollander v. Am. Cyanamid Co.</u>, 895 F.2d 80, 85-86 (2d Cir. 1990) (four-month period deemed insufficient to establish nexus between protected activity and adverse employment action); <u>Dao v. Oppenheimer Funds, Inc.</u>, No. 10 Civ. 8413 (KBF), 2012 U.S. Dist. LEXIS 67731, at *22-23 (S.D.N.Y. May 2, 2012) ("the passage of six months between the time of the alleged complaint and plaintiff's termination eliminates any inference plaintiff can draw that the two are connected"); <u>Smiley v. Cassano</u>, No. 10 Civ. 3866 (RJS), 2012 U.S. Dist LEXIS 39615, at *22-24 (S.D.N.Y. Mar. 21, 2012) (nine-month period between protected activity and first adverse

employment action held too lengthy to establish an inference of a causality); <u>Stavis v. GFK Holding, Inc.</u>, 769 F. Supp. 2d 330, 339 (S.D.N.Y. 2011) ("the passage of six months between the protected activity and the adverse employment action prevents [p]laintiff from meeting his burden with respect to. . . the causal connection between the protected activity and the adverse employment action"); <u>Muhammad v. Juicy Couture/Liz Claiborne, Inc.</u>, No. 09 Civ. 8978(PAC)(THK), 2010 U.S. Dist. LEXIS 108343, at *17 (S.D.N.Y. 2010) (opinion to Crotty, J.) (holding that a two-year gap between the employer's knowledge of the employee's participation in the protected activity and the allegedly adverse employment action is "such a lengthy lapse of time [that it] <u>cannot</u> support an inference of causality") (emphasis added); <u>Murray v. Visiting Nurse Servs.</u>, 528 F. Supp. 2d 257, 275-76 (S.D.N.Y. 2007) (holding that temporal proximity did not exist where a period of seventeen to nineteen months had passed between the protected activity and the adverse action and discussing cases where a period of only two to three months was deemed insufficient).

       If, as the Second Circuit has repeatedly held, a two to three month lapse of time <u>cannot</u> support an inference of causality, clearly a three-year lapse of time cannot support an inference of causality.  Applying this straightforward law to the facts of this case necessarily leads to the conclusion that Wakim cannot establish causation.  First, it is undisputed that Wakim's participation in a protected activity -- the Wage and Hour Lawsuit -- was known to Sparks in September 2006.  Pastore Decl. Ex. C [Complaint] ¶ 12; Pl's Rule 56.1 Counterstatement ¶ 11.[3] Second, the only purportedly adverse employment action complained of in this action -- the

---

[3]  As the U.S. Supreme Court has held, the initial measuring date to determine causation for a retaliation claim is when the employer learned of the employee's participation in a protected activity – here, September 2006.  <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001) (holding that, as a matter of law, an employment action taken twenty months after employer's knowledge of employee's participation in a protected activity "suggests, by itself, no causality at all" for purposes of a retaliation claim).  So, to the extent the Court used the settlement of the Wage and Hour Lawsuit in 2009 as the initial measuring date, that would be incorrect as a matter of law.

restaurant-wide implementation of a rotation system for the wait staff -- occurred in September 2009.  Pastore Decl. Ex. C [Complaint] ¶¶ 23; 33; 57; 65.  This is a <u>three-year</u> lapse of time -- during which Wakim continued to work uninterrupted in the runner position at Sparks.  Despite the Court's finding that "it cannot be said that the two events are separate and unrelated" (Decision at 15), dozens of cases in this Circuit hold the exact opposite -- <u>i.e.</u>, that, as a matter of law, the two events are necessarily separate and unrelated where such a long time lapse separates them.  Accordingly, Sparks respectfully submits that the Court erred in finding that Plaintiff met his *prima facie* burden on causation for the two retaliation claims.[4]

**B.      THE COURT ERRED BY MEASURING CAUSALITY FROM A PURPORTED REASSIGNMENT IN OCTOBER 2006, WHICH REASSIGNMENT WAS RESCINED AND, THEREFORE, WAS NOT THE ADVERSE EMPLOYMENT ACTION FROM WHICH TEMPORAL PROXIMITY IS TO BE MEASURED <u>FOR PLAINTIFF'S RETALIATION CLAIMS</u>**

In holding that Plaintiff met his *prima facie* burden on causation, the Court erred by using October 11, 2006 as the measuring date for the "adverse employment action."  In particular, the Court concluded that the temporal proximity between the purported reassignment in October 11, 2006 and Wakim's participation in the Wage and Hour Lawsuit was "more than enough to establish that the protected activity and adverse employment action were 'very close' in time." Decision at 15.  Simply put, the rescinded reassignment in October 11, 2006 cannot be the measuring date for temporal proximity because: (1) it is not an adverse employment action as matter of law; (2) it is not the adverse employment action for which Wakim seeks a remedy; (3) it is statutorily time-barred; and (4) to hold otherwise would effectively toll Wakim's retaliation claim indefinitely.  Accordingly, October 11, 2006 is not the correct date from which to measure causation.

---

[4] Despite Plaintiff's repeated use of the phrase "revenge is a dish best served cold," the law expressly holds the opposite -- that a plaintiff cannot meet his *prima facie* burden of causation after such a lengthy lapse of time.

1.      **The Purported Reassignment in October 2006 Does Not Constitute an "Adverse" Employment Action and, Therefore, Should Not Have Been Used <u>as the Date for Measuring Temporal Proximity of the Retaliation Claims</u>**

As set forth above and in the Decision, the governing standard for causation on a retaliation claim requires that there be an "adverse employment action" disadvantaging the plaintiff.  Decision at 13; <u>Mullins</u>, 626 F.3d at 53.  Simply put, the purported reassignment of Wakim in October 2006 -- which was rescinded and never implemented -- was not an adverse employment action within the meaning of either the FLSA or the NYLL.  Accordingly, it is not the proper date for measuring temporal proximity of Wakim's retaliation claims.

In addressing the issue of whether a promptly rescinded employment action may ever support a retaliation claim, this Circuit routinely holds that such an employment action is not sufficiently adverse to satisfy the plaintiff's *prima facie* burden.  For instance, in <u>Schiano v. Quality Payroll Systems</u>, the Second Circuit addressed a situation where the employer allegedly retaliated against the plaintiff for complaining of another employee's sexual harassment by requiring the plaintiff to report to a more senior supervisor.  445 F.3d 597, 602 (2d Cir. 2006).  The next day, however, the supervisor retracted the new reporting procedure after the plaintiff complained of the procedure and attempted to tender a letter of resignation.  <u>Id.</u>  The Second Circuit affirmed the dismissal of the plaintiff's retaliation claim based upon the rescinded reporting procedure, holding that "no reasonable factfinder could find that the [employer's] conduct rose to the level of an adverse employment action" because the employer "rescinded the change the following day in response to [plaintiff's] complaint."  <u>Id.</u> at 609; <u>see</u> <u>also</u> <u>Marshall v. N.Y. City Bd. of Elections</u>, 322 Fed. Appx. 17, 19-20 (2d Cir. 2009) ("later-rescinded [employee] advisory" held insufficient to constitute  an "'adverse'" employment action); <u>Ross-Caleb v. City of Rochester</u>, No. 08-CV-6548, 2011 U.S. Dist. LEXIS 144348, at *26 (W.D.N.Y. Dec. 15, 2011) (Plaintiff's retaliation claims were dismissed where (1) most of the adverse

employment actions occurred two years after the protected activity and (2) the remaining disciplinary action was rescinded by the employer and, therefore, was not "adverse").

Here, as in Schiano, the purported reassignment of Wakim in October 2006 was immediately retracted. Pastore Decl. Ex. C [Complaint] ¶ 18 ("Sparks did not reassign Wakim to the front-waiter position"), Ex. D [Wakim Tr.], at 44. It is also undisputed that Wakim continued to work as a runner for the duration of his employment with Sparks and that the he never once served as a front waiter.[5] Pastore Decl. Ex. C [Complaint] ¶ 18; Pl's Rule 56.1 Counterstatement ¶ 3. As a result, Wakim did not suffer any disadvantage as a result of the never implemented reassignment. Therefore, the purported reassignment in 2006 cannot qualify as an adverse employment action. See Yerdon v. Henry, 91 F.3d 370, 377-78 (2d Cir. 1996) ("An adverse action is one that affects the terms, privileges, duration, or conditions of employment") (citation and internal quotation marks omitted); Schiano, 445 F.3d at 609.

Because the purported reassignment is not an adverse employment action, it cannot be used as the adverse employment action in deciding whether Plaintiff met his *prima facie* case on causation. See Mullins, 626 F.3d at 53. Instead, this Court should have measured temporal proximity of the retaliation claims from the implementation of the rotation policy in September 2009 -- an event which, as discussed above, was, as a matter of law, necessarily separate and unrelated to when Sparks learned of Wakim's participation in the Wage and Hour Lawsuit three years earlier. See Point B, supra.

---

[5]   Indeed, Wakim continued to work for Sparks as a runner for the next three years -- with no intervening adverse employment action taken against him.

**2.      Even if the Purported Reassignment in October 2006 Can be Deemed "Adverse," it is Not the Action for which Wakim Seeks Relief and, Therefore, Should Not Have Been Used as the Date for Measuring Temporal Proximity of the Retaliation Claims**

Even if the purported reassignment in October 2006 constituted an adverse employment action (which it cannot), Plaintiff has not sought any relief for the purported reassignment.  In the Complaint, Plaintiff baldly alleges that Sparks "terminated Wakim and otherwise discriminated and retaliated against him as a result of his participation in the [Wage and Hour Lawsuit]." Pastore Decl. Ex. C [Complaint] ¶¶ 57; 65.  Moreover, in his Memorandum of Law in Opposition to Sparks' Motion for Summary Judgment, Plaintiff expressly maintains that "Sparks' refusal to allow [him] to continue to perform his duties as a runner constituted the disadvantageous employment action."  Pl's Mem. of Law, at 21.  Neither of these allegations may plausibly be interpreted as referring to the purported reassignment in October 2006.

Clearly, Sparks did not terminate Wakim's employment in October 2006 -- as he continued to work uninterrupted for Sparks for three more years.  Pl's Rule 56.1 Counterstatement ¶ 3.  Plaintiff's statement that Sparks "refus[ed] to allow him to continue to perform his duties as runner" also cannot refer to the purported reassignment in 2006 -- as he continued to work and earn money as a runner for three more years.  Furthermore, Plaintiff's additional assertion that Sparks "otherwise discriminated and retaliated against him" is too vague and conclusory to establish any grounds for relief, let alone relief stemming from the retracted October 2006 purported reassignment.  See Mayo v. Cnty. of Albany, 357 Fed. Appx. 339, 343 (2d Cir. 2009) (entirely conclusory assertions are insufficient to overcome summary judgment); see also Kraemer v. Elmira Auto Paint Supplies, 903 F. Supp. 315, 317 (N.D.N.Y. 1995) (plaintiff is not entitled to relief under the FLSA if the complaint contains merely conclusory allegations).

10

Respectfully, the Court erred when it considered the purported reassignment in October 2006 as the measuring date for temporal proximity.  Plaintiff has not even complained of that event as the adverse employment action and is barred from doing so here.  See Brandon v. City of New York, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment.")

3.    **Even if the Purported Reassignment in October 2006 Can be Deemed "Adverse," and is the Adverse Action for which Wakim Seeks Relief, Any Claim Based on the Purported Reassignment Would Be Time-Barred**

Even assuming that the purported reassignment in October 2006 can be deemed adverse and is the action for which Wakim seeks relief, a cause of action based on the purported reassignment would be time-barred under both the FLSA and the NYLL.  The statute of limitations for claims under the FLSA is two years from the employment action complained of, or three years for any "willful violation."  29 U.S.C. § 255(a) (2012); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008).  Similarly, retaliation claims under the NYLL must be brought within two years from the date of the alleged retaliatory conduct.  N.Y. Labor Law § 215(2)(a); Reilly v. Natwest Mkts. Grp., Inc., 178 F. Supp. 2d 420, 427 (S.D.N.Y. 2002).  Plaintiff filed his Complaint on January 2, 2010 -- over three years and two months after the purported reassignment on October 11, 2006.  Accordingly, even if Wakim's retaliation claims could be construed to be based on the purported reassignment (which they cannot), any such claims would be time-barred as a matter of law.  If the claims would be time-barred under the applicable statutes, this is yet another reason why the never-implemented reassignment of Wakim in 2006 should not have been used by the Court in measuring the date for temporal proximity of the retaliation claims.

**4.    If the Decision Is Not Corrected and the Date for Measuring Temporal Proximity of the Retaliation Claims is a Reassignment Which Indisputably Was Never Implemented, then the Court Has Effectively Tolled the Retaliation Claims Indefinitely and Divested Sparks from the Right to <u>Manage Its Employees and Its Business</u>**

By concluding that the temporal proximity between the purported reassignment in October 11, 2006 and Wakim's participation in the Wage and Hour Lawsuit was "more than enough to establish that the protected activity and adverse employment action were 'very close' in time," (Decision at 15), the Court effectively ruled that Wakim's retaliation claim was fixed in time in October 2006 and tolled indefinitely thereafter.  This is an unjust result and, if adopted as law, would divest employers of the ability and right to manage their personnel.

Neither the FLSA nor the NYLL contemplate such a broad liability scheme.  As the FLSA's Policy Declaration states, it was the intent of Congress in enacting the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standards of living necessary for health, efficiency, and general well-being of workers … <u>without</u> <u>substantially</u> <u>curtailing</u> <u>employment</u> <u>or</u> <u>earning</u> <u>power</u>."  29 U.S.C. § 202 (2012) (emphasis added).  Deciding whether purported retaliatory conduct is actionable often requires "a balancing" of the statute's goal of protecting the employees' ability to challenge the employer's purportedly prohibited actions, with "Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel."  <u>Freilich v. Bd. of Dirs. of Upper Chesapeake Health, Inc.</u>, 142 F. Supp. 2d 679, 699 (D. Md. 2001) (discussing parallel anti-retaliation scheme of the Americans with Disabilities Act), <u>aff'd</u>, 313 F.3d 205 (4th Cir. 2002).

Wakim worked uninterrupted as a runner at Sparks for three years, admittedly suffered no intervening adverse employment action, and was one of approximately fifty employees who were subject to a restaurant-wide rotation policy in 2009.  Despite this, the Decision appears to hold that the purported reassignment in October 2006 fixed Wakim's retaliation claims in time

and set an irreversible measure for temporal proximity of any subsequent retaliation claim by Wakim -- even three years later.  The Decision identifies no discernible measure for how many years would have to pass for the purported reassignment in October 2006 <u>not</u> to be the measuring date for temporal proximity of the retaliation claims.  Accordingly, the period set by the Decision is effectively indefinite.  This is an untenable result, inconsistent with the governing law of this Circuit, and severely constrains the rights of employers to manage their employees.

## C. THE SEPTEMBER 2009 ROTATION POLICY DID NOT TARGET WAKIM, BUT APPLIED TO DOZENS OF WAIT STAFF AT SPARKS, AND, <u>THEREFORE, WAS NOT RETALIATORY AS A MATTER OF LAW</u>

The September 2009 rotation policy is not actionable for additional reasons not discussed in the Decision -- namely it does not target Plaintiff and, therefore, cannot be considered retaliatory conduct.  <u>Gomez v. Pellicone</u>, 986 F. Supp. 220, 231 (S.D.N.Y. 1997) (holding plaintiff failed to establish a *prima facie* case of retaliation where the alleged adverse employment action, <u>i.e.</u>, plaintiff's termination, "was the result of a personnel action that also impacted two other employees" and occurred a year after the protected activity); <u>Neratko v. Frank</u>, 31 F. Supp. 2d 270, 297 (W.D.N.Y. 1998) ("A plaintiff who does no more than demonstrate that the employer was enforcing a generally applicable policy against him fails to establish an adverse employment action").

In essence, if this Court were not to correct the Decision, the Court will be making new law in a case where the purported adverse employment action occurred after a three-year lapse of time and applied to most of the employer's workforce -- here, fifty employees.  Pastore Decl. Ex. I [Cetta Tr.], at 37-38; Pastore Decl. Ex. D [Wakim Tr.], at 47.  Further, the person who claims that the action was specifically adverse to him: (1) has been adjudged by this Court (Decision at 13) and by the Social Security Administration (Pastore Decl. Ex. A [Notice of Award], at 1) as unable to work in any capacity (which, of course, begs the question how an adverse employment

action could have been taken against him), (2) never even reported for work to Sparks (Pastore Decl. Ex. D [Wakim Tr.], at 61-62; Pastore Decl. Ex. I [Cetta Tr.], at 61); and (3) never supplied Sparks with any medical records in support of his purported disability accommodation request (Pastore Decl. Ex. D [Wakim Tr.], at 66-67).  To disregard well-settled law under these circumstances would be manifestly unjust to Sparks.

**D.    EVEN IF WAKIM COULD ESTABLISH A PRIMA FACIE CASE OF RETALIATION, A LEGITIMATE NONDISCRIMINATORY BUSINESS PURPOSE SUPPORTED THE IMPLEMENTATION OF THE SEPTEMBER 2009 ROTATION SYSTEM**

As the Court noted on page 14 of the Decision, the establishment of a *prima facie* case does not alone satisfy Plaintiff's burden of overcoming a motion for summary judgment. Rather, the employer has the opportunity to submit a "legitimate, non-discriminatory reason for the employment action," which the plaintiff then must refute by "'present[ing] sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered . . . were false.'"  Decision at 14 (quoting Mullins, 626 F.3d at 53).  Respectfully, the Court further erred by rejecting the legitimate business purpose proffered by Sparks -- that the rotation system was implemented as an outgrowth of the Wage and Hour Lawsuit in order to equalize the wait staff's wages and tips -- merely on the basis of one maitre'd's opinion that "the staff rotations 'hurt' Sparks' business and were a 'horrible mistake.'"  Decision at 16 (quoting Pechman Decl. Ex. 1 [Kapovic Tr.],  at 11-12).  The quotes attributed to Valter Kapovic were taken wholly out of context and cannot be the basis upon which the Court determines that Sparks did not have a legitimate, non-discriminatory business purported when implementing the rotation policy in 2009.

This Circuit has uniformly held that evidence merely "'contradicting the employer's given [business] reason -- without more -- does not necessarily give logical support to an

inference of discrimination,' and is therefore not enough to meet plaintiff's burden." Henkin v. Forest Labs, No. 01 Civ. 4255 (AKH), 2003 U.S. Dist. LEXIS 3060, at *13 (S.D.N.Y. Mar. 5, 2003) (quoting James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000)), aff'd, 88 Fed. Appx. 478 (2d Cir. 2004). "Instead, the court must conclude, based on the factual record taken as a whole, that a reasonable jury could find discrimination to have been at least a contributing factor in the defendant's decision." Id. at 13-14.

Here, the record is replete with evidence supporting Sparks' proffered legitimate business reason for implementing the September 2009 rotation policy. This evidence includes: (1) the statements of Sparks' front maitre'd, Valter Kapovic, that the 2009 rotation policy was implemented as a consequence of the Wage and Hour Lawsuit and that the restaurant needed to "treat everybody equal" (Pastore Decl. Ex. H [Kapovic Tr.], at 7-8); (2) the assertion of Steve Cetta, son of Sparks' owner, that the 2009 system was implemented to treat staff equally (Pastore Decl. Ex. I [Cetta Tr.], at 37); (3) Steve Cetta's additional statement that the rotation of wait staff was intended to "change the efficiency of the kitchen" (Pastore Decl. Ex. I [Cetta Tr.], at 37); and (4) Plaintiff's own statement that, when he was notified of the rotation policy, it was stated that "the law" had "change[d]" (Pastore Decl. Ex. D [Wakim Tr.], at 35). Contrary to Plaintiff's claims and the Court's statements (see Decision at 16), the opinion of Kapovic that the rotation system was a bad idea does not refute this proof. Rather, Kapovic's statement merely shows that one person, a front maitre'd -- in a restaurant that employs more than fifty people in its wait staff alone and has three other floor maitre'ds -- thought the system impeded operational efficiency because personnel had to be retrained to do different jobs. Pechman Decl., Ex. 1 [Kapovic Tr.], at 12. However, Kapovic also stated that, although initially some of the front waiters who were working as runners were not really qualified to work as runners, they "are going to learn." Id. Further, disagreements in business policies occur on a daily basis, and

they cannot, by themselves, constitute conclusive proof that a given business decision was

implemented for illegal discriminatory reasons.  See e.g. Webber v. Int'l Paper Co., 417 F.3d

229, 238 (1st Cir. 2005) (rejecting plaintiff's argument that employer's business justification

was pretextual and stating that "an employee's opinion of the efficacy of an employment

decision, standing alone, cannot supplant the employer's business judgment").

Accordingly, even if Plaintiff met his *prima facie* burden, Sparks' demonstrated that it

had a legitimate business reason for the September 2009 rotation system.  For this reason alone,

it is respectfully submitted that the Court should have dismissed Plaintiff's retaliation claims.

## **CONCLUSION**

For the foregoing reasons, and upon the entirety of the record, Sparks respectfully

requests that the Court reconsider its May 17, 2012 Decision and Order and grant Sparks' motion

for summary judgment dismissing Plaintiff's third and fourth claims, along with such further

relief as the Court deems just and proper.

Dated:  New York, New York
   May 31, 2012

         Respectfully submitted,

         Duval & Stachenfeld LLP


     By: //S// Timothy J. Pastore
        Timothy J. Pastore, Esq.
        101 Park Avenue, 11th Floor
        New York, NY 10178
        Tel. No.:  (212) 883-1700

        Attorneys for Defendants
        Michael Cetta, Inc. d/b/a Sparks
        Steakhouse, Inc. and Michael Cetta