UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x
IBRAHIM T. WAKIM,

                              Plaintiff,

       -against-                             10 Civ. 0518 (PAC) (GWG)

MICHAEL CETTA, INC. d/b/a SPARKS
STEAKHOUSE and MICHAEL CETTA,

                             Defendants.
-------------------------------------------------------------------------- x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION

**Duval & Stachenfeld LLP**
**101 Park Avenue, Eleventh Floor**
**New York, New York 10178**
**Attorneys for Defendants**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

A. THE SETTLEMENT OF THE WAGE AND HOUR LAWSUIT IS NOT THE PROPER MEASURE FOR TEMPORAL PROXIMITY AS A MATTER OF LAW ........ 1

B. AS PLAINTIFF ADMITS, THE OCTOBER 2006 PURPORTED REASSIGNMENT IS NOT THE PROPER MEASURE FOR TEMPORAL PROXIMITY ........ 2

C. THE PASSAGE OF THREE YEARS BETWEEN THE PROPER MEASURING EVENTS NECESSARILY MEANS THAT THOSE TWO EVENTS ARE "SEPARATE AND UNRELATED" AS A MATTER OF LAW ........ 4

D. PLAINTIFF HAS NOT -- AND CANNOT -- ESTABLISH CAUSATION THROUGH PROOF OF RETALIATORY ANIMUS ........ 5

E. THE DECISION DOES NOT ACCOUNT FOR THE UNDISPUTED FACT THAT THE SEPTEMBER 2009 ROTATION POLICY APPLIED TO DOZENS OF WAIT STAFF AT SPARKS, AND, THEREFORE, WAS NOT RETALIATORY AS A MATTER OF LAW ........ 8

F. PLAINTIFF WAS ADJUDGED UNABLE TO WORK AS OF SEPTEMBER 7, 2009 -- PRIOR TO BEING SUBJECT TO THE ROTATION POLICY -- AND, THEREFORE, CANNOT SHOW THAT THE POLICY WAS ADVERSE TO HIM ........ 8

G. EVEN IF PLAINTIFF COULD ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION, PLAINTIFF CANNOT SHOW THAT THE BUSINESS JUSTIFICATION FOR THE ROTATION POLICY WAS PRETEXTUAL ........ 9

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

Page

**Cases**

Abdullah v. Skandinaviska Enskilda Banken Corp.,
   No. 98 Civ. 7398 (JSR), 1999 U.S. Dist. LEXIS 16045 (S.D.N.Y. Oct. 19, 1999) .................. 9

Action House v. Koolik,
   54 F.3d 1009 (2d Cir. 1995) .............................................................................................. 9

Azkour v. Little Rest Twelve, Inc.,
   No. 10 Civ. 4132 (RJS)(KNF), 2012 U.S. Dist. LEXIS 16039 (S.D.N.Y. Feb. 7, 2012) .......... 1

Chavez v. Iberia Foods Corp.,
   No. 05 CV 2464(NG)(RER), 2007 U.S. Dist. LEXIS 47449 (E.D.N.Y. June 29, 2007) .......... 5

Clark Cnty. Sch. Dist. v. Breeden,
   532 U.S. 268 (2001) ........................................................................................................ 1

Gilman v. Runyon,
   865 F. Supp. 188 (S.D.N.Y. 1994) .................................................................................. 10

Gomez v. Pellicone,
   986 F. Supp. 220 (S.D.N.Y. 1997) .................................................................................... 8

Graham v. Henderson,
   89 F.3d 75 (2d Cir. 1996) ................................................................................................ 6

Hollander v. Am. Cyanamid Co.,
   895 F.2d 80 (2d Cir. 1990) ........................................................................................... 1, 2

Jones v. Potter,
   No. 01-CV-0546E(Sc), 2004 U.S. Dist. LEXIS 5035 (W.D.N.Y. Feb. 2, 2004) ..................... 6

Marro v. Nicholson,
   No. 06-CV-6644 (JFB) (ARL), 2008 U.S. Dist. LEXIS 19272 (E.D.N.Y. Mar. 12, 2008) ...... 6

Marshall v. N.Y. City Bd. of Elections,
   322 Fed. Appx. 17 (2d Cir. 2009) .................................................................................. 4, 6

McGuinnes v. Lincoln Hall,
   263 F.3d 49 (2d Cir. 2001) .............................................................................................. 7

Muhammad v. Juicy Couture/Liz Claiborne, Inc.,
   No. 09 Civ. 8978(PAC)(THK), 2010 U.S. Dist. LEXIS 108343 (S.D.N.Y. July 30, 2010) ...... 7

Oi Kwan Lai v. Eastpoint Int'l, Inc.,
   No. 99 CIV. 2095 (DLC), 2000 U.S. Dist. LEXIS 12502 (S.D.N.Y. Aug. 30, 2000) ........... 1, 2

Pierce v. Mansfield,
   530 F. Supp. 2d 146 (Dist. D.C. 2008) ....................................................................................... 6

Quarless v. Bronx-Lebanon Hosp. Ctr.,
   228 F. Supp. 2d 377 (S.D.N.Y. 2002) ....................................................................................... 7

Schiano v. Quality Payroll Systems,
   445 F.3d 597 (2d Cir. 2006) ................................................................................................. 4, 6

Virgilio v. City of New York,
   407 F.3d 105 (2d Cir. 2005) ....................................................................................................... 9

Walker v. N.Y. City Dep't of Corr.,
   No. 01 Civ. 1116 (LMM), 2008 U.S. Dist. LEXIS 97109 (S.D.N.Y. Nov. 18, 2008) .............. 6

Defendants Michael Cetta, Inc. d/b/a Sparks Steakhouse, Inc. and Michael Cetta (collectively, "Sparks") respectfully submit this reply memorandum of law in further support of their motion for partial reconsideration.[1]

## ARGUMENT

### A.  THE SETTLEMENT OF THE WAGE AND HOUR LAWSUIT IS NOT THE PROPER MEASURE FOR TEMPORAL PROXIMITY AS A MATTER OF LAW

In a self-serving distortion of the governing law, Plaintiff argues that he has met his *prima facie* burden of showing causation based upon the fact that the adverse action -- the 2009 Rotation Policy -- "went into effect within days" of the September 2009 Settlement of the Wage and Hour Lawsuit (the "Settlement").  Pl's Opp'n, 2.  In particular, Plaintiff claims that his ongoing participation in the Wage and Hour Lawsuit, culminating in its Settlement, is the correct initial measuring point for temporal proximity of a retaliation claim.  Id. at 2-3.  Of course, Plaintiff offers no legal authority for this position -- because it is flatly contradicted by well-settled United States Supreme Court precedent.  Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (the initial measuring date to determine causation for a retaliation claim is when the employer learned of the employee's participation in a protected activity -- here, September 2006); see Azkour v. Little Rest Twelve, Inc., No. 10 Civ. 4132 (RJS)(KNF), 2012 U.S. Dist. LEXIS 16039, at *21 (S.D.N.Y. Feb. 7, 2012) (the filing of the FLSA complaint, not the settlement, is the protected activity); Oi Kwan Lai v. Eastpoint Int'l, Inc., No. 99 CIV. 2095 (DLC), 2000 U.S. Dist. LEXIS 12502, at *14 (S.D.N.Y. Aug. 30, 2000) (protected activity is the filing of a FLSA complaint); see also Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (the filing of plaintiff's EEOC complaint,

---

[1]  The exhibits cited herein are those annexed to the previously submitted April 29, 2011 Declaration of Timothy J. Pastore.  References to Sparks' May 31, 2012 Memorandum of Law in Support of Partial Reconsideration shall be as follows: "Moving Brief, __."  References to Plaintiff's June 21, 2012 Memorandum of Law in Opposition to the Motion for Partial Reconsideration shall be as follows: "Pl's Opp'n, __" or "the Opposition."  Unless otherwise expressly defined herein, all capitalized terms shall have the same meaning as those defined in the Reconsideration Motion.

1

not the ongoing EEOC investigation, is the protected activity from which to measure proximity).[2]

Notwithstanding Plaintiff's wholly unsupported claim that the Settlement should be the initial measure for temporal proximity of the retaliation claims, the Decision does not and should not reach that conclusion. In fact, in the only relevant portion of the Decision which uses dates to measure temporal proximity, the Court stated:

> Wakim contends that Defendants initially assigned him to work as a front waiter on October 11, 2006, in retaliation for having opted into the Duchene lawsuit merely two weeks earlier. <u>That proximity is more than enough to establish that the protected activity and adverse employment action were 'very close' in time</u>.

Decision at 15 (emphasis added). Based on the foregoing, the Court correctly held that the initial measure for temporal proximity is when Wakim opted into the Duchene lawsuit in September 2006. Id. As set forth below, however, the foregoing excerpt of the Decision and the case citations which immediately follow it,[3] demonstrate that the Court went on to mistakenly identify the purported reassignment of Wakim on "October 11, 2006" as the "adverse employment action." Id. Respectfully, this is not correct. As Plaintiff admits, the purported reassignment actually never occurred, and it is, therefore, not the adverse employment action at issue here. Pl's Opp'n, 2-3 (referring to the 2009 Rotation Policy as the adverse employment action).

**B.  AS PLAINTIFF ADMITS, THE OCTOBER 2006 PURPORTED REASSIGNMENT IS NOT THE PROPER MEASURE FOR TEMPORAL PROXIMITY**

Plaintiff admits that October 11, 2006 is the incorrect measuring date for determining

---

[2] Not surprisingly, the plaintiffs in both <u>Oi Kwan Lai</u> and <u>Hollander</u>, like Wakim in the Wage and Hour Lawsuit, continued to participate in their respective litigations. <u>Oi Kwan Lai</u>, 2000 U.S. Dist. LEXIS 12502, at *6-7; <u>Hollander</u> 895 F.2d at 82. Nevertheless, the courts in each case measured proximity from the employer's knowledge of the filing of the action or complaint, not the resolution date. <u>Oi Kwan Lai</u>, 2000 U.S. Dist. LEXIS 12502, at *14; <u>Hollander</u> 895 F.2d at 85-85. The same result should apply here.

[3] Immediately following the quoted language in the Decision, the Court cites to two cases both of which deal with a temporal separation of only days/weeks -- in contrast to the three-year temporal separation here. Decision at 15. If, as the citation to these cases suggests, the Court deems the temporal separation here only to be days or weeks, then we respectfully submit that the Court did not measure the correct events.

proximity – *i.e.*, that October 11, 2006 is not when the "adverse employment action" occurred. Id.  Instead, Plaintiff maintains that the Court never, in fact, used October 2006 as a measuring event.  Id.  This is contradicted by the above-quoted language -- which mistakenly identifies October 11, 2006 as the date of the "adverse employment action" and characterizes that date as "very close in time" to the initial measuring date (which the Court correctly identifies as when Wakim opted into the Duchene lawsuit in September 2006).  Decision at 15.

After mistakenly identifying October 11, 2006 as the date of the "adverse employment action," the Court states the following a few sentences later (also on page 15):

> Normally, it would be difficult to argue that there is a causal connection given the temporal separation between the time of filing the Duchene lawsuit and the adverse employment action.  On the unique facts of this case, however, at this time, it cannot be said that the two events are separate and unrelated.

Id. (emphasis added).  While this part of the Decision does not specify the dates of the "two events" being measured, the earlier excerpt (also from page 15 of the Decision) measured and identified the two events as (i) when Wakim opted into the Duchene lawsuit in September 2006, and (ii) when Wakim was purportedly reassigned to the front waiter position in October 2006 (a reassignment which it is undisputed never occurred).  Id.

As Plaintiff admits, the use of the purported reassignment in October 2006 as a measure of temporal proximity is a mistake of fact.  However, Plaintiff ignores that the use of October 11, 2006 as a measuring date also constitutes a mistake of law.  The purported reassignment -- which was retracted and never implemented -- was not adverse as a matter of law, would be time-barred under the statute of limitations if it was the basis of an independent cause of action, and cannot be used as a springboard to toll Plaintiff's retaliation claims forever.   Accordingly, Sparks respectfully requests reconsideration of the Decision on these grounds.

3

## C. THE PASSAGE OF THREE YEARS BETWEEN THE PROPER MEASURING EVENTS NECESSARILY MEANS THAT THOSE TWO EVENTS ARE "SEPARATE AND UNRELATED" AS A MATTER OF LAW

To the extent that the "two events" held by the Court not to be "separate and unrelated" refer to the correct measuring events -- *i.e.*, Sparks' knowledge of Plaintiff's participation in the Wage and Hour Lawsuit in September 2006 and the implementation of the Rotation Policy in September 2009 -- Sparks respectfully submits that the Court committed legal error because a three year lapse cannot, as a matter of law, support an inference of causation. Moving Brief, 4-7.

Further, if the Court held that the purported reassignment in October 2006 somehow tolls the three-year time lapse and renders the "filing of the Duchene lawsuit and the adverse employment action . . . [not] separate and unrelated" (Decision at 15), it is respectfully submitted that the Court committed additional legal error. As set forth in the Moving Brief, the October 2006 purported reassignment cannot be used to toll Plaintiff's retaliation claims because that reassignment -- which was retracted and never occurred -- was not legally adverse to Plaintiff and, therefore, must be treated as a nullity for measuring temporal proximity. Moving Brief, 8-9 (citing Marshall v. N.Y. City Bd. of Elections, 322 Fed. Appx. 17, 19-20 (2d Cir. 2009); Schiano v. Quality Payroll Sys., 445 F.3d 597, 602 (2d Cir. 2006)).

Moreover, if the October 2006 purported reassignment is treated as some kind of tolling event, this circumvents and renders meaningless the two-year statute of limitation of the FLSA and the NYLL. Moving Brief, 11. The statute of limitations would bar any independent cause of action based upon the purported reassignment in October 2006 -- an event that occurred over three years and two months before Plaintiff commenced this action. Id. If, as a matter of undisputed fact, the reassignment never occurred and if, as matter of law, it could not form the basis of an independent cause of action, it should not be used as the linchpin for measuring

4

temporal proximity of a retaliation claim which, at best, materialized three year later.  This is tantamount to tying the employer's hands and upsets the balancing scheme of the anti-retaliation statutes by over-protecting Plaintiff's interests without regard to Sparks' equally important interest and right to manage its business.  Id. at 12-13 (discussing the policies of the FLSA).

In the Opposition, Plaintiff does not address any of these arguments, does not distinguish any of Sparks' supporting cases, or cite any relevant cases of his own.  Accordingly, it is respectfully requested that the Court reconsider the Decision and determine that a three-year lapse of time between the correct measuring events necessarily means that the two events are separate and unrelated as a matter of law and cannot form the basis of a retaliation claim.

**D.  PLAINTIFF HAS NOT -- AND CANNOT -- ESTABLISH CAUSATION THROUGH PROOF OF RETALIATORY ANIMUS**

Recognizing the faults of his temporal proximity arguments, Plaintiff argues that he has instead demonstrated causation by showing that Sparks exhibited a retaliatory animus toward him.  Pl's Opp'n, 1, 4.  Plaintiff principally relies on two alleged instances of animus: (1) a negative comment allegedly made by defendant Michael Cetta's wife Marcia in 2006, and (2) the purported reassignment of Plaintiff in October 2006.  Notably, both events occurred three years before the alleged retaliatory act.

As an initial matter, the Decision correctly makes no reference to the purported statements of Marcia Cetta in holding that Plaintiff raised an issue of fact as to retaliatory animus.  Decision at 15-16.  The Court appropriately omits any reference to these statements because the law consistently holds that statements so remote in time from the alleged retaliatory action (*i.e.*, the 2009 Rotation Policy) are too tenuous to support an inference of causation based upon animus.  See e.g. Chavez v. Iberia Foods Corp., No. 05 CV 2464(NG)(RER), 2007 U.S. Dist. LEXIS 47449, *21 (E.D.N.Y. June 29, 2007) (to be probative of unlawful retaliation,

5

"isolated comments must be contemporaneous with the [employment decision in question] or causally related to the decision making process"); Jones v. Potter, No. 01-CV-0546E(Sc), 2004 U.S. Dist. LEXIS 5035, at *27-28 (W.D.N.Y. Feb. 2, 2004) (statement made six years before the adverse employment action "does not support a causal connection"); see also Pierce v. Mansfield, 530 F. Supp. 2d 146, 162 (Dist. D.C. 2008) (statement "is too tenuous -- having been made more than a year and a half prior to the adverse action -- to support a causal link").[4]

To the extent that the Decision may be read to conclude that the October 2006 purported reassignment constitutes evidence of retaliatory animus (Decision at 15), Sparks respectfully submits that the Court erred. As with the statements made by Marcia Cetta, the purported reassignment occurred nearly three years before the alleged adverse employment action -- a period that is, as a matter of law, too lengthy to support a causal inference based upon retaliatory animus. Walker v. N.Y. City Dep't of Corr., No. 01 Civ. 1116 (LMM), 2008 U.S. Dist. LEXIS 97109, at *68 (S.D.N.Y. Nov. 18, 2008) ("Generally, three years would be considered well outside the timeframe that would suggest causation or retaliatory animus"). Additionally, as discussed in the Moving Brief, the purported reassignment cannot be regarded as proof of retaliatory animus because that reassignment was immediately rescinded and is therefore not adverse to Plaintiff. Moving Brief, 8-9 (citing Marshall, 322 Fed. Appx. at 19-20 (rescinded employee advisory was not "sufficiently 'adverse'" to support retaliation claim); Schiano, 445 F.3d at 609 ("no reasonable factfinder could find" that rescinded action was adverse to plaintiff)). Plaintiff makes no attempt to distinguish this case law, but instead, he baldly asserts (without

---

[4] The 2006 statements made by Marcia Cetta do not constitute proof of animus for another reason -- Plaintiff never alleged that Marcia Cetta was a person with decision-making authority or that she was involved in implementing the Rotation Policy. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (to establish animus, plaintiff must prove that retaliation was a "substantial or motivating factor" in the decision making process leading to the adverse action); Marro v. Nicholson, No. 06-CV-6644 (JFB) (ARL), 2008 U.S. Dist. LEXIS 19272, at *30 (E.D.N.Y. Mar. 12, 2008) (comments made by a person "not alleged to have played any role" in the termination "cannot constitute direct evidence" of animus).

6

citation to any authority) that the 2006 purported reassignment is somehow "informative as to Sparks' motives in 2009." Pl's Opp'n, 2. The purported reassignment cannot be used to glean proof of a retaliatory motive, however, because an action that is not adverse to Plaintiff, or does not disadvantage Plaintiff as a matter of law, is simply not retaliatory. Quarless v. Bronx-Lebanon Hosp. Ctr., 228 F. Supp. 2d 377, 386 (S.D.N.Y. 2002) ("an adverse employment action is a necessary element of a retaliation claim"), aff'd, 75 Fed. Appx. 846 (2d Cir. 2003).

With all due respect, the Court further erred to the extent that it held that the exemption of Joanne Wejrowski from the Rotation Policy "strengthens the inference of retaliatory animus." Decision at 16. For an inference of animus to be raised based on the differential treatment of employees, it must be shown that the differently treated employees were "similarly situated in all material respects." McGuinnes v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001). Plaintiff cannot show that Wejrowski was similarly situated from the other employees subject to the Rotation Policy because Wejrowksi, unlike Wakim, was not on the wait staff schedule and, also unlike Wakim, worked the lunch shift. See e.g. Muhammad v. Juicy Couture/Liz Claiborne, Inc., No. 09 Civ. 8978(PAC)(THK), 2010 U.S. Dist. LEXIS 108343, at *19-20 (S.D.N.Y. July 30, 2010) (plaintiff could not establish "retaliatory motive" by alleging differential treatment with another employee where the other employee held a different position and, thus, was not "similarly situated in all material respects") (citation and internal quotation marks omitted).

Plaintiff has not -- and cannot -- demonstrate retaliatory animus because the actions he relies upon are either not retaliatory or are too far removed from the adverse employment action to constitute evidence of causation. Insofar as the Court held to the contrary, it is respectfully submitted that it committed error warranting reconsideration.

7

E.   **THE DECISION DOES NOT ACCOUNT FOR THE UNDISPUTED FACT THAT THE SEPTEMBER 2009 ROTATION POLICY APPLIED TO DOZENS OF WAIT STAFF AT SPARKS, AND, THEREFORE, WAS NOT RETALIATORY AS A MATTER OF LAW**

The Decision does not account for the undisputed fact that the Rotation Policy applied to approximately fifty other employees and in no way specifically targeted Plaintiff.  Moving Brief, 13-14.  Retaliation claims based upon such broadly applied, workforce-wide policies have been frequently rejected on the ground that such policies are not retaliatory.  See e.g. Gomez v. Pellicone, 986 F. Supp. 220, 231 (S.D.N.Y. 1997) (plaintiff failed to establish a *prima facie* case of retaliation where the alleged employment action "was the result of a personnel action that also impacted two other employees").  Plaintiff completely ignores this point in the Opposition.  It is respectfully requested, therefore, that the Court revisit this issue and dismiss Plaintiff's retaliation claims on the basis that the Rotation Policy was not retaliatory as a matter of law.

F.   **PLAINTIFF WAS ADJUDGED UNABLE TO WORK AS OF SEPTEMBER 7, 2009 -- PRIOR TO BEING SUBJECT TO THE ROTATION POLICY -- AND, THEREFORE, CANNOT SHOW THAT THE POLICY WAS ADVERSE TO HIM**

As discussed in the Moving Brief, Plaintiff was adjudged by the Social Security Administration and this Court as permanently disabled and unable to work in any capacity as of September 7, 2009.  Moving Brief, 13-14 (citing Decision, at 13; Pastore Decl. Ex. A [Notice of Award], at 1).  Because Plaintiff was, as a matter of law, unable to work, Sparks could not take an adverse employment action against him -- whether that employment action was the Rotation Policy or some other action which, unlike the Rotation Policy, specifically targeted Plaintiff.[5]  Consequently, Plaintiff cannot possibly show that he sustained damages as a result of any

---

[5] Suppose, for example, Wakim was specifically targeted for termination (which he was not).  Even under that more extreme circumstance, the termination could not be adverse to Wakim because he could not work anyway.  In other words, he can show no damage.

8

purportedly adverse action because he cannot be reinstated or be awarded front or back pay.[6]
Neither the Opposition nor the Decision addresses this issue.  It is respectfully requested that the Court reconsider the Decision, as damages are a necessary element of a retaliation claim.

## G. EVEN IF PLAINTIFF COULD ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION, PLAINTIFF CANNOT SHOW THAT THE BUSINESS JUSTIFICATION FOR THE ROTATION POLICY WAS PRETEXTUAL

In rejecting Sparks' proffered business reason for the Rotation Policy -- namely that the Policy was implemented as a result of the Wage and Hour Lawsuit -- the Court relied exclusively upon Valter Kapovic's opinions about the Rotation Policy.  Decision at 16.  Respectfully, this was error.  As argued in the Moving Brief, Kapovic's opinions are not fact and do not undermine Sparks' legitimate business reason for the Policy.  As a matter of law, an opinion is legally insufficient to overcome Plaintiff's heavy burden of showing Sparks' reason was pretextual.  Moving Brief, 14-16; see Abdullah v. Skandinaviska Enskilda Banken Corp., No. 98 Civ. 7398 (JSR), 1999 U.S. Dist. LEXIS 16045, at *19 (S.D.N.Y. Oct. 19, 1999) (supervisors' "difference of opinion" as to how to manage their employees "provides no evidence of . . . pretext").[7]

Plaintiff argues that the Rotation Policy's goal of equalizing the treatment of wait staff "had absolutely nothing to do" with the Wage and Hour Lawsuit.  Pl's Opp'n, 6.  This is nonsense.  As Plaintiff admits, the Wage and Hour Lawsuit was commenced to ensure that "workers engaged in food preparation . . . were receiving an equal share of the tips as waiters

---

[6] This Circuit has held that, if there is no viable claim for compensatory damages, there can be no punitive damages claim.  Virgilio v. City of New York, 407 F.3d 105, 117 (2d Cir. 2005) ("punitive damages . . . cannot be invoked without some compensatory injury"); Action House v. Koolik, 54 F.3d 1009, 1013 (2d Cir. 1995) ("requir[ing] a finding of actual damages before punitive damages may be awarded").  Therefore, Plaintiff's claim for five million dollars in punitive damages also fails as a matter of law.

[7]  Plaintiff disingenuously argues that Kapovic's opinion binds Sparks because Kapovic was a Rule 30(b)(6) witness.  Plaintiff fails to disclose that Kapovic was also a fact witness (pursuant to a deposition notice served by Plaintiff, dated May 14, 2010).  Regardless, Kapovic's opinions are his own and do not remotely undermine the legitimate business reasons proffered for the adoption of the Rotation Policy.

who actually provided direct customer service." Id.  The Rotation Policy does exactly this -- by giving each waiter an opportunity to earn an equal amount of tips.  See Moving Brief, 15; Pastore Decl. Ex. H [Kapovic Tr.], at 7-8 (stating the Rotation Policy was implemented as a result of the Wage and Hour Lawsuit's mandate "to treat everybody equal"); Pastore Decl. Ex. I [Cetta Tr.], at 37 (stating the Rotation Policy was implemented to treat staff equally).

The fact that Sparks could have equalized tips through means other than the Rotation Policy is irrelevant.  The law does not require Sparks to show that the Rotation Policy was the best possible way to equalize the roles of the wait staff.  Gilman v. Runyon, 865 F. Supp. 188, 192-193 (S.D.N.Y. 1994) (dismissing a retaliation claim and stating that "it is not the fact finder's function to second guess business decisions or to question an employer's means to achieve a legitimate goal . . . so long as the employer's actions were not taken for a discriminatory reason").  It is respectfully submitted, therefore, that the Court erred in holding that a question of fact was raised sufficient to overcome summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, and those stated in the Moving Brief, Sparks respectfully requests that the Court reconsider its May 17, 2012 Decision and Order and grant Sparks' summary judgment dismissing Plaintiff's third and fourth claims for retaliation.

Dated: New York, New York
July 11, 2012

                    Respectfully submitted,

                    DUVAL & STACHENFELD LLP

By:   //S// Timothy J. Pastore
       Timothy J. Pastore, Esq.
       101 Park Avenue, 11th Floor
       New York, NY 10178
       Tel. No.:  (212) 883-1700

*Attorneys for Defendants*