UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

IBRAHIM T. WAKIM,

                                Plaintiff,

             -against-

MICHAEL CETTA, INC. d/b/a SPARKS
STEAKHOUSE and MICHAEL CETTA,

                           Defendants.

------------------------------------------------------------------------- x

             :
             :   10 Civ. 0518 (PAC) (GWG)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**Duval & Stachenfeld LLP
101 Park Avenue, Eleventh Floor
New York, New York 10178
Attorneys for Defendants**

**TABLE OF CONTENTS**

                                                                                                      **Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL HISTORY .......................................................................................................... 3

FACTUAL BACKGROUND ........................................................................................................ 4

    A.  Plaintiff's Position at Sparks ......................................................................................... 4

    B.  Plaintiff's Participation in the Wage and Hour Lawsuit Against Sparks ........................ 4

    C.  Sparks Settles the Wage and Hour Lawsuit and Adopts a Neutral
        Rotation Policy for its Waitstaff .................................................................................... 5

    D.  Plaintiff Stops Working at Sparks and is Determined to be Totally Disabled ................ 6

    E.  Plaintiff Fails to Provide Sparks with Requested Medical Documentation ..................... 6

    F.  Plaintiff Applies for and is Granted Benefits from the SSA
        Based on a Claim of Total Disability ............................................................................. 8

ARGUMENT ................................................................................................................................ 9

    A.  THE LEGAL STANDARD GOVERNING SUMMARY JUDGMENT ........................ 9

    B.  AS A MATTER OF LAW, PLAINTIFF WAS NOT DISADVANTAGED
        BY THE ADOPTION OF THE ROTATION POLICY AND,
        THEREFORE, CANNOT MEET THE ELEMENTS OF A
        RETALIATION CLAIM UNDER THE FLSA OR THE NYLL .................................. 10

    C.  PLAINTIFF WAS ADJUDGED UNABLE TO WORK AS OF
        SEPTEMBER 7, 2009 -- PRIOR TO BEING SUBJECT TO THE
        ROTATION POLICY -- AND, THEREFORE, HAS NO ACTIONABLE
        DAMAGES ..................................................................................................................... 12

CONCLUSION ............................................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

Action House, Inc. v. Koolik,
    54 F.3d 1009 (2d Cir. 1994)......................................................................................13

Anderson v. Liberty Lobby, Inc.,
    77 U.S. 242 (1986)...................................................................................................9

Artica v. J.B. Custom Masonry & Concrete, Inc.,
    No. 09-CV-3796 (RER),
    2012 U.S. Dist. LEXIS 103272 (E.D.N.Y. July 16, 2012) ......................................... 12-13

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)................................................................................................9

Dotson v. City of Syracuse,
    No. 5:04-CV-1388 (NAM/GJD),
    2011 U.S. Dist. LEXIS 20374 (N.D.N.Y. Mar. 2, 2011 ) ................................................. 12

Fowler v. New York Transit Auth.,
    No. 96 Civ. 6796 (JGK), 2001 U.S. Dist. LEXIS 762 (S.D.N.Y. 2001) .......................... 12

Knight v. U.S. Fire Ins. Co.,
    804 F.2d 9 (2d Cir. 1986), <u>cert denied</u>, 480 U.S. 932 (1987) ............................................9

Korea Life Ins. Co. v. Morgan Guar. Trust Co. of N.Y.,
    269 F. Supp. 2d 424 (S.D.N.Y. 2003).................................................................................9

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).................................................................................................9

Mitchell v. Washingtonville Cent. Sch. Dist.,
    190 F.3d 1 (2d Cir. 1999) ........................................................................................11

Rein v. CAB E. LLC,
    No. 08-Civ.-2899(PAC), 2009 WL 1748905 (S.D.N.Y. Jun. 22, 2009) ...........................9

Torres v. Gristede's Operating Corp.,
    628 F. Supp. 2d 447 (S.D.N.Y. 2008).................................................................2, 10, n. 1

Virgilio v. City of New York,
    407 F.3d 105 (2d Cir. 2005).......................................................................................13

**Page**

**RULES AND STATUTES**

Fed. R. Civ. P. 56.........................................................................................................1, 9

Defendants Michael Cetta, Inc. d/b/a Sparks Steakhouse, Inc. and Michael Cetta (collectively, "Sparks"), by their attorneys, Duval & Stachenfeld LLP, respectfully submit this memorandum of law, the Declaration of Timothy J. Pastore, dated January 18, 2013 (the "Pastore Decl."), with the exhibits attached thereto, and the Local Civil Rule 56.1 Statement of Material Facts in support of its motion for summary judgment on Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Ibrahim T. Wakim ("Plaintiff") -- a former employee of Sparks -- brought this action seeking money damages against Sparks for two claims of disability discrimination under the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL") and two claims of retaliation under the Federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

Plaintiff's disability discrimination claims were previously dismissed in a Decision and Order entered May 17, 2012 (the "Summary Judgment Decision").  In dismissing the disability claims, this Court concluded that Plaintiff was judicially estopped from claiming that Sparks should have accommodated Plaintiff's disability because Plaintiff applied for, was awarded, and continues to accept thousands of dollars of monthly disability benefits from the Social Security Administration ("SSA") based on the SSA's finding that Plaintiff was totally disabled and unable to work in any capacity as of September 7, 2009.

Like the disability claims, Plaintiff's remaining claims for retaliation must also be dismissed because the evidentiary record confirms that Plaintiff was not "disadvantaged" or damaged -- an essential element of any retaliation claim.  The retaliation claims here are based on Sparks' implementation in September 2009 of a waitstaff rotation policy (the "Rotation

Policy") by which all waitstaff at Sparks were to rotate equally between front waiter and runner

positions. Plaintiff -- preferring to work only as a runner -- alleges that the Rotation Policy

(which applied to approximately fifty personnel) was targeted directly at him as retaliation for

his choice to join a wage and hour lawsuit against Sparks three years earlier in September 2006.

However, to establish a *prima facie* case of retaliation under the FLSA or the NYLL, Plaintiff

must prove each of the following elements: (1) participation in protected activity known to the

defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection

between the protected activity and the adverse employment action. Torres v. Gristede's

Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008) (Crotty, J.).

Simply put, Plaintiff cannot meet the second element -- because the employment action

allegedly taken by Sparks and complained of by Plaintiff did not and could not disadvantage or

damage Plaintiff in any way. As a matter of undisputed fact, Plaintiff's full and complete

disability arose before the implementation of the Rotation Policy. Accordingly, Plaintiff was

already unable to work as a runner, a front waiter, within a rotation system -- or in any other

capacity at any place of employment as a matter of law. Sparks' subsequent implementation of

the Rotation Policy was a nullity to Plaintiff because, if he could not perform any job (as this

Court has already held), Sparks could not change his job. This is not a question of fact or a

matter of opinion, it is a matter of law -- as adjudged by the SSA in response to a detailed

disability benefits application made by Plaintiff himself.

Having been adjudged by the SSA to be unable to work as of a date before the Rotation

Policy was even implemented, Plaintiff has no damages -- i.e., he cannot be reinstated, is not

entitled to back or front pay, and cannot claim that an employment action which could not apply

to him as a matter of law caused him actionable emotional distress. As damages are a necessary

element of a retaliation claim, Plaintiff's claims must fail.  Accordingly, Plaintiff cannot state a

*prima facie* claim for retaliation under the FLSA or the NYLL and both retaliation claims must

be dismissed.

## **PROCEDURAL HISTORY**

Plaintiff commenced this action seeking money damages against Sparks for two claims of

disability discrimination under the NYCHRL and the NYSHRL and two claims of retaliation

under the FLSA and the NYLL.

Following discovery, Sparks moved for summary judgment seeking dismissal of all

claims on the grounds that: (1) Plaintiff was adjudged by the SSA to be totally disabled from any

and all work and therefore, his disability could not be accommodated by Sparks as a matter of

law; (2) Plaintiff failed to participate in the interactive process required for a disability

accommodation request -- in that Plaintiff failed to submit medical records as requested by

Sparks in consideration of Plaintiff's disability accommodation request; (3) Plaintiff could not

prove a *prima facie* case of retaliation because a three-year lapse of time between his

participation in a protected activity in September 2006 and the alleged adverse employment

action in September 2009 could not support an inference of causality as a matter of law; and (4)

the waitstaff rotation policy alleged by Plaintiff to be retaliatory against him applied to

approximately fifty other waitstaff and, therefore, was not an actionable adverse employment

action targeted to Plaintiff.

In its Summary Judgment Decision, the Court dismissed Plaintiff's two disability

discrimination claims, but denied Sparks' motion for summary judgment as to the two retaliation

claims.  On May 30, 2012, Sparks moved for partial reconsideration of the Summary Judgment

Decision, to the extent it denied Sparks' motion for summary judgment on the two claims for

retaliation.  On September 11, 2012, the Court denied the motion for partial reconsideration.

However, at a court conference on December 6, 2012, the Court specifically authorized Sparks to

bring this summary judgment motion on the grounds that Plaintiff was not and could not have

been disadvantaged by the Rotation Policy and has no actionable damages -- having been

adjudged fully disabled and unable to work in any capacity as a matter of law on September 7,

2009 (i.e., <u>before</u> Plaintiff the implementation of the Rotation Policy).  For the reasons set forth

herein, the remaining claims for retaliation must be dismissed as a matter of law.

## FACTUAL BACKGROUND

### A.      Plaintiff's Position at Sparks

Plaintiff was employed by Sparks as a waiter at the restaurant -- earning an annual salary

in excess of $95,000 at the time he applied to the SSA for complete disability.  Pastore Decl. Ex.

B [Disability Report] ¶ 6(A) ("Rate of Pay"); Pastore Decl. Ex. C [Complaint] ¶ 9.  Between

approximately 2001 and September 2009, Plaintiff was assigned to the position of "runner" at

the restaurant.  Pastore Decl. Ex. D [Wakim Tr.], at 13.  As a "runner" at Sparks, Plaintiff was

responsible for taking food from the kitchen to the various dining rooms of the restaurant and

serving customers.  Pastore Decl. Ex. C [Complaint] ¶ 10; Pastore Decl. Ex. E [Work History

Report], at 3.

### B.      Plaintiff's Participation in the Wage and Hour Lawsuit Against Sparks

In or about June 2006, a class action lawsuit entitled *Duchene, et al. v. Michael Cetta,*

*Inc. d/b/a Sparks Steakhouse* (the "Wage and Hour Lawsuit") was filed against Sparks asserting

certain claims on behalf of Sparks' waitstaff for unpaid wages and tips pursuant to the FLSA and

the NYLL.  Pastore Decl. Ex. C [Complaint] ¶ 11.  On or about September 26, 2006, Plaintiff

opted into the class -- which was comprised of more than sixty individuals -- suing Sparks as part

of the Wage and Hour Lawsuit.  Id. ¶ 12.

It is undisputed that Sparks management and ownership was aware of Plaintiff's

participation in the Wage and Hour Lawsuit as of approximately September 2006 -- three years

before the purported retaliation which is the subject of this action.  Pastore Decl. Ex. C

[Complaint] ¶ 12.   Nevertheless, Plaintiff continued to work uninterrupted in the runner position

at Sparks for three years until September 2009 -- all the while being paid by Sparks.  Pastore

Decl. Ex. B [Disability Report] ¶ 6(A) ("Rate of Pay"); Pastore Decl. Ex. D [Wakim Tr.], at 45.

Despite this, Plaintiff contends in this action that Sparks lay in wait for those three years --

paying him handsomely all along -- until Sparks determined to retaliate against Plaintiff by

adopting a general waitstaff rotation policy that applied to approximately fifty other employees.

**C.     Sparks Settles the Wage and Hour Lawsuit and Adopts a Neutral Rotation Policy
        for its Waitstaff**

On or about September 10, 2009, the Court approved a settlement between Sparks and

the class in the Wage and Hour Lawsuit, totaling more than $3 million.  Pastore Decl. Ex. C

[Complaint] ¶ 25.  Plaintiff received more than $60,000 as part of this settlement.  Id.

After the approval of the settlement of the Wage and Hour Lawsuit on September 10,

2009, Sparks adopted a neutral staffing policy -- the Rotation Policy -- which was intended to

equalize the workload of its waitstaff and promoted fairness between the front waiter and runner

positions.  Pastore Decl. Ex. F [Kapovic Tr.], at 7-8; Pastore Decl. Ex. G [Cetta Tr.], at 37;

Pastore Decl. Ex. D [Wakim Tr.], at 38 (Q: So the rotation policy changed before the lawsuit was

officially settled [on September 10, 2009]? A: No, after.").  Pursuant to the Rotation Policy,

Sparks ended the practice of permanently assigning individuals to the positions of "runners" and

"front-waiters" and instead began rotating its entire waitstaff -- comprised of approximately fifty

individuals -- between these positions on a regular basis.  Pastore Decl. Ex. G [Cetta Tr.], at 37-

38; Pastore Decl. Ex. D [Wakim Tr.], at 47.  As set forth below, at the time of the

implementation of the Rotation Policy (which Plaintiff claims was an adverse employment action

targeted against him), Plaintiff was fully disabled and unable to work in any capacity for Sparks.

**D.**     **Plaintiff Stops Working at Sparks and is Determined to be Totally Disabled**

On or about September 5, 2009 -- <u>prior</u> <u>to</u> <u>the</u> <u>implementation</u> <u>of</u> <u>the</u> <u>Rotation</u> <u>Policy</u> <u>by</u>

<u>Sparks</u> -- Plaintiff began an approximately three-week vacation from which he was scheduled to

return on or about September 29, 2009.  Pastore Decl. Ex. D [Wakim Tr.] at 35-38.  On or about

September 14, 2009, while on vacation, Plaintiff visited Dr. Douglas A. Schwartz, D.O. ("Dr.

Schwartz") in connection with injuries to his neck, back and shoulder suffered by Plaintiff in

2008.  Pastore Decl. Ex. D [Wakim Tr.], at 84.  During this visit on September 14, 2009, Plaintiff

informed Dr. Schwartz that the pain associated with his neck, back and shoulder injuries had

worsened and that he had "stopped working as a waiter or in any other work capacity due to

exacerbation[]" of these symptoms.  Pastore Decl. Ex. H [Schwartz Evaluation], at 1; Pastore

Decl. Ex. D [Wakim Tr.], at 86.  After evaluating Plaintiff during this visit, Dr. Schwartz

determined that Plaintiff was "total[ly] disabl[ed] from any and all work[.]"  Pastore Decl. Ex. H

[Schwartz Evaluation], at 2; Pastore Decl. Ex. D [Wakim Tr.], at 90-91.

Plaintiff understood at the time that Dr. Schwartz's determination that he was totally

disabled meant that he could not work in any capacity.  Pastore Decl. Ex. D [Wakim Tr.], at 90.

**E.**     **Plaintiff Fails to Provide Sparks with Requested Medical Documentation**

On or about September 24, 2009 -- ten days after he had been determined to be "totally

disabled" by Dr. Schwartz -- Plaintiff submitted directly to Sparks via facsimile a one-page letter

purportedly written by a Dr. Jabbar Zafar, D.O. (the "Zafar Letter").  Pastore Decl. Ex. I [Zafar

Letter].  The Zafar Letter -- which was misdated and not on letterhead -- stated that it would be

"medically unacceptable" for Plaintiff to "return to a physically demanding job such as being a front waiter," citing Plaintiff's "extensive past medical history significant for neck, back, shoulder, and hand problems," as well as certain "psychosocial stressors" related to Plaintiff's "work life." Id. The Zafar Letter was not accompanied by any additional medical documentation supporting or explaining the conclusions set forth therein (nor was it reconciled with Dr. Schwartz' finding that Plaintiff was totally disabled).

On September 24, 2009, Sparks manager Valter Kapovic ("Kapovic") sent a letter to Plaintiff (the "Kapovic Letter") seeking additional clarification with respect to the Zafar Letter. Pastore Decl. Ex. J [Kapovic Letter]. Kapovic informed Plaintiff in the Kapovic Letter that the Zafar Letter was "not acceptable" under Sparks policy, and advised Plaintiff that "[m]edical forms are to be retrieved from the Restaurant Administrator and completed by a medical professional." Id. Despite this invitation from Sparks to submit the required medical substantiation, it is undisputed that Plaintiff never provided Sparks with any additional medical documentation concerning his purported disabilities. Pastore Decl. Ex. D [Wakim Tr.], at 66-67.

On September 29, 2009 -- fifteen days after having been determined to be totally disabled by Dr. Schwartz -- Plaintiff returned to Sparks from his vacation to deliver to Kapovic a written request (the "Wakim Letter") that he be permitted to continue working as a "runner," together with a substantively identical copy of the Zafar Letter that previously had been submitted to Sparks. Pastore Decl. Ex. C [Complaint] ¶¶ 27-28; Pastore Decl. Ex. D [Wakim Tr.], at 54-60. After receiving the Wakim Letter, Kapovic offered Plaintiff the opportunity to work his scheduled shift on that day as a waiter in the bar area of the restaurant -- a station considered among the least demanding in the restaurant. Pastore Decl. Ex. F [Kapovic Tr.], at 34-35; Pastore Decl. Ex. D [Wakim Tr.] at 35 ("After I came back from vacations [sic], they told me

that the law here change and you get to rotate. . . .").  In response to this offer, Plaintiff stated

"No, thank you," and walked off the job.  Id. at 38.  It is undisputed that Plaintiff never reported

for work at Sparks after September 29, 2009.  Pastore Decl. Ex. D [Wakim Tr.], at 61-62;

Pastore Decl. Ex. G [Cetta Tr.], at 61.

**F.      Plaintiff Applies for and is Granted Benefits from the SSA Based on a
          Claim of Total Disability**

After Plaintiff stopped reporting for work at Sparks on September 29, 2009, he never

sought any other employment.  Pastore Decl. Ex. D [Wakim Tr.], at 128.  Instead, in or about

October 2009, Plaintiff applied for full disability benefits from the SSA.  Pastore Decl. Ex. D

[Wakim Tr.], at 102.  In his application, Plaintiff informed the SSA in great detail that he had

stopped working on September 7, 2009 because of his physical and mental medical conditions.

Pastore Decl. Ex. B [Disability Report] ¶ 4(c); Pastore Decl. Ex. D [Wakim Tr.], at 103-04.

Plaintiff understood that he was seeking disability benefits from the SSA based on a claim of

total disability -- which he understood to mean that he was not capable of working.  Pastore

Decl. Ex. D [Wakim Tr.], at 128, 131.

On or about May 29, 2010, the SSA determined that Plaintiff "became disabled under our

rules on September 7, 2009," and, therefore, was entitled to disability benefits.  Pastore Decl. Ex.

A [Notice of Award], at 1.  Plaintiff understood that the SSA's determination that he was entitled

to disability benefits was based on a finding that he is totally disabled and incapable of working.

Pastore Decl. Ex. D [Wakim Tr.], at 131.  Plaintiff has received thousands of dollars of monthly

disability benefits from the SSA based on the SSA's finding that Plaintiff was totally disabled

and unable to work in any capacity as of September 7, 2009.  Pastore Decl. Ex. D [Wakim Tr.],

at 131-32.  Plaintiff has never disavowed these disability benefits nor challenged the SSA's

determination that he is totally disabled.  Id.

## ARGUMENT

### A.   THE LEGAL STANDARD GOVERNING SUMMARY JUDGMENT

Summary judgment is designed to "secure the just, speedy and inexpensive determination of every action," by enabling the Court to "streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citation omitted), cert denied, 480 U.S. 932 (1987). Summary judgment is appropriate where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the party seeking summary judgment has pointed out the absence of a genuine issue of material fact, the party opposing the motion for summary judgment "must raise more than just 'metaphysical doubt as to the material facts.'" Korea Life Ins. Co. v. Morgan Guar. Trust Co. of N.Y., 269 F. Supp. 2d 424, 435 (S.D.N.Y. 2003) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Instead, the opposing party must present specific evidence in support of its contention that there is a genuine dispute as to material facts. Rein v. CAB E. LLC, No. 08-Civ.-2899(PAC), 2009 WL 1748905, *2 (S.D.N.Y. Jun. 22, 2009) (J. Crotty); see also Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Based on this clear standard, Plaintiff's claims for retaliation must be dismissed because there can be no dispute that -- as of the implementation of the Rotation Policy in September 2009 -- Plaintiff was already fully disabled and unable to work as matter of law. Therefore, the Rotation Policy was not an adverse employment action against him for which he has any actionable damages.

**B.      AS A MATTER OF LAW, PLAINTIFF WAS NOT DISADVANTAGED BY THE ADOPTION OF THE ROTATION POLICY AND, THEREFORE, CANNOT MEET THE ELEMENTS OF A RETALIATION CLAIM UNDER THE FLSA OR THE NYLL**

As a matter of law, Plaintiff cannot meet the elements of a retaliation claim under the FLSA and NYLL because he cannot show that he was disadvantaged by the implementation of the Rotation Policy.  To establish a *prima facie* case of retaliation under the FLSA or the NYLL,[1] a plaintiff must prove each of the following elements:  (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.  Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008) (Crotty, J.).  Simply put, Plaintiff cannot meet the second element -- because the employment action allegedly taken by Sparks and complained of by Plaintiff did not and could not disadvantage Plaintiff in any way.

As matter of fact and law, Plaintiff was adjudged by the SSA to be unable to work in any capacity as of September 7, 2009.  Pastore Decl. Ex. A [Notice of Award], at 1.  According to Plaintiff's sworn testimony, the Rotation Policy was implemented by Sparks sometime after the September 10, 2009 approval of settlement of the Wage and Hour Lawsuit.  Pastore Decl. Ex. D [Wakim Tr.], at 38 (Q: So the rotation policy changed before the lawsuit was officially settled [on September 10, 2009]?  A: No, after.").  Given that Plaintiff was on vacation for most of September 2009, he was not even subject to the Rotation Policy until his return on September 29, 2009.  Pastore Decl. Ex. D [Wakim Tr.] at 35 ("After I came back from vacations [sic], they told me that the law here change and you get to rotate. . . .").

---

[1] As this Court has recognized, the anti-retaliation provisions of the FLSA and the NYLL are "nearly identical" and that claims under each statute can be addressed by an identical analysis.  Torres, 628 F. Supp. 2d at 471 n. 18.

Whether measured as of September 10, 2009 (when the Wage and Hour Lawsuit settlement was approved) or September 29, 2009 (when Plaintiff returned from vacation), there is no question that Sparks' implementation of the Rotation Policy post-dated September 7, 2009 -- the duly adjudged and undisputed effective date of Plaintiff's full and complete disability. Indeed, as of September 7, 2009, Plaintiff could not perform the role of front waiter or runner at Sparks. This is not a question of fact or a matter of opinion, it is a matter of law. Although Plaintiff has repeatedly claimed in this litigation that he could actually perform the job of runner, this Court (in the Summary Judgment Decision) and the Second Circuit have held that a plaintiff who makes factual statements to the SSA in obtaining disability benefits is judicially estopped from maintaining an inconsistent position in a subsequent lawsuit against his employer. Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 7-8 (2d Cir. 1999) (plaintiff-employee was estopped from arguing that he could perform the essential functions of his position after he, like Plaintiff, made contrary factual statements to the SSA); see also Pastore Decl. Ex. K [Summary Judgment Decision], at 13. Further, by his own admission, Plaintiff has never disavowed the disability determination made by the SSA or the timing thereof. Pastore Decl. Ex. D [Wakim Tr.], at 131-32. Nor has Plaintiff sought to refund the many thousands of dollars in federal disability benefits he has received and continues to receive. Id.

As a matter of undisputed fact, Plaintiff's full and complete disability arose before the adoption of the Rotation Policy and weeks before Plaintiff returned to Sparks from vacation on September 29, 2009. Therefore, as Plaintiff was unable to work as a runner, a front waiter, within a rotation system, or in any other capacity, the adoption of the Rotation Policy by Sparks did not, and could not, disadvantage Plaintiff. Upon the onset of his full disability on September 7, 2009, Plaintiff could perform no job. So, any change in his job -- which he claims the

Rotation Policy represents -- was of no force and effect as to him.  The Rotation Policy did not

advantage or disadvantage Plaintiff.  Plaintiff never served under the Rotation Policy and he

never <u>could</u> <u>have</u> served under the Rotation Policy.  Accordingly, Plaintiff cannot state a *prima*

*facie* claim for retaliation under the FLSA or the NYLL and both retaliation claims must be

dismissed.

**C.      PLAINTIFF WAS ADJUDGED UNABLE TO WORK AS OF SEPTEMBER 7, 2009 -- PRIOR TO BEING SUBJECT TO THE ROTATION POLICY -- AND, <u>THEREFORE, HAS NO ACTIONABLE DAMAGES</u>**

Even if Plaintiff could claim somehow that he was disadvantaged by the Rotation Policy

(which he cannot), Plaintiff cannot show that he sustained any damages as a result of the

Rotation Policy.  Indeed, as of September 7, 2009, Plaintiff was unable to work.  Having been

adjudged by the SSA to be unable to work as of a date <u>before</u> the Rotation Policy was even

implemented, Plaintiff's claims for reinstatement of his job, back pay, front pay and purported

emotional distress all fail.  Under New York law, once a *prima facie* case of retaliation is

established, a plaintiff has the burden of proving an entitlement to damages.  "'[I]t does not

follow that simply because there was retaliation, there must be an award of compensatory

damages; rather, the compensatory damages must be proven and not presumed.'"  <u>Dotson v. City</u>

<u>of Syracuse</u>, No. 5:04-CV-1388 (NAM/GJD), 2011 U.S. Dist. LEXIS 20374, at *37 (N.D.N.Y.

Mar. 2, 2011 ) (quoting <u>Fowler v. New York Transit Auth.</u>, No. 96 Civ. 6796 (JGK), 2001 U.S.

Dist. LEXIS 762, at *10 (S.D.N.Y. 2001)).  As damages are a necessary element of a retaliation

claim, Plaintiff's claims fail.

Also, because Plaintiff is not entitled to compensatory damages, his claim for punitive

damages must also fail.  "New York law . . . requires a finding of actual damages before

punitive damages may be awarded."  <u>Artica v. J.B. Custom Masonry & Concrete, Inc.</u>, No. 09-

CV-3796 (RER), 2012 U.S. Dist. LEXIS 103272, at *31 (E.D.N.Y. July 16, 2012) (quoting

Action House, Inc. v. Koolik, 54 F.3d 1009, 1013 (2d Cir. 1994)) (alteration in original); Virgilio

v. City of New York, 407 F.3d 105, 117 (2d Cir. 2005) ("punitive damages . . . cannot be

invoked without some compensatory injury"); Action House v. Koolik, 54 F.3d 1009, 1013 (2d

Cir. 1995) ("requir[ing] a finding of actual damages before punitive damages may be awarded").

Therefore, Plaintiff's claim for five million dollars in punitive damages also fails as a matter of

law.

As Plaintiff was not and could not be damaged by the implementation of the Rotation

Policy, Sparks is entitled to judgment as a matter of law with respect to Plaintiff's two retaliation

claims.

## CONCLUSION

For these reasons, Sparks respectfully requests that the Court enter summary judgment in

its favor and dismiss Plaintiff's two retaliation claims with prejudice.

Dated:  New York, New York
        January 18, 2013

Respectfully submitted,

Duval & Stachenfeld LLP

By:     //S// Timothy J. Pastore
        Timothy J. Pastore, Esq.
        Ella Wolf, Esq.
        101 Park Avenue, 11th Floor
        New York, NY 10178
        Tel. No.:  (212) 883-1700

        Attorneys for Defendants
        Michael Cetta, Inc. d/b/a Sparks
        Steakhouse, Inc. and Michael Cetta

13