UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
IBRAHIM T. WAKIM,

                           Plaintiff,

        -against-

MICHAEL CETTA, INC. d/b/a SPARKS
STEAKHOUSE and MICHAEL CETTA,

                         Defendants.
------------------------------------------------------------------------ x

10 Civ. 0518 (PAC) (GWG)

**ORAL ARGUMENT REQUESTED**

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Duval & Stachenfeld LLP**
**101 Park Avenue, Eleventh Floor**
**New York, New York 10178**
**Attorneys for Defendants**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

  I.    PLAINTIFF'S REPEATED CLAIMS THAT HE WAS READY, WILLING AND ABLE TO WORK AS A RUNNER AT SPARKS ARE BARRED BY THE DOCTRINES OF JUDICIAL ESTOPPEL AND LAW OF THE CASE ........................... 2

      A.  The SSA And This Court Have Already Concluded As A Matter Of Law That Plaintiff Could Not Work As Of September 7, 2009 ................................... 2

      B.  Plaintiff's Sworn Statements To This Court Expressly Contradict His Prior Sworn Statements To The SSA And Constitute A Fraud Either Upon This Court Or The SSA ........................................................................... 4

  II.   PLAINTIFF COULD NOT HAVE BEEN DISADVANTAGED BY THE ADOPTION OF THE ROTATION POLICY AFTER THE ONSET OF HIS FULL DISABILITY AND, THEREFORE, HE HAS NO ACTIONABLE DAMAGES ................................................................................................................ 5

      A.  There Is No Basis For Mental Anguish Damages ....................................... 5

      B.  The Cases Cited By Plaintiff In Support of His Purported Mental Anguish Claim Have Absolutely No Applicability Here -- As Not One Of Those Cases Involved A Plaintiff Who -- Like Wakim -- Was Adjudged Unable To Work ............. 6

      C.  Because Plaintiff Is Not Entitled To Compensatory Damages, Plaintiff's Claim For Punitive Damages Must Also Fail ............................................... 8

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**                                                                                              Page

A.I. Trade Fin. v. Centro Internationale Handelsbank AG,
    926 F. Supp. 378 (S.D.N.Y. 1996)..................................................................................3-4

Action House, Inc. v. Koolik,
    54 F.3d 1009 (2d Cir. 1994)..............................................................................................9

Avitia v. Metropolitan Club,
    49 F.3d 1219 (7th Cir. 1995) ............................................................................................8

Bates v. Long Island R.R. Co.,
    997 F.2d 1028 (2d Cir. 1993)............................................................................................4

Christianson v. Colt Indus. Operating Corp.,
    486 U.S. 800 (1988)..........................................................................................................3

Cush-Crawford v. Adchem Corp.,
    271 F.3d 352 (2d Cir. N.Y. 2001).....................................................................................9

Do Yea Kim v. 167 Nail Plaza,
    No. 05 CV 8560(GBD), 2008 WL 2676598 (S.D.N.Y. 2008) ........................................7

Gomez v. Pellicone,
    986 F. Supp. 220 (S.D.N.Y. 1997)................................................................................7 n.4

Kendel v. Local 17-A United Food & Commer. Workers,
    2013 U.S. Dist. LEXIS 10461 (N.D. Ohio Jan. 25, 2013)................................................9

King v. Macri,
    993 F.2d 294 (2d Cir. 1993)..............................................................................................9

Lai v. Eastpoint Int'l, Inc.,
    99 CIV 2095 (DLC), 2002 WL 265148 (S.D.N.Y. 2002) ...............................................7

Liona Corp. v. PCH Assocs. (In re PCH Assocs.),
    949 F.2d 585 (2d Cir. N.Y. 1991).....................................................................................3

Mitchell v. Washingtonville Ctr. Sch. Dist.,
    190 F.3d 1 (2d Cir. 1999) .................................................................................................3

Moore v. Freedman,
    355 F.3d 558 (6th Cir. 2004) .........................................................................................7-8

Neratko v. Frank,
    31 F. Supp. 2d 270 (W.D.N.Y. 1998).............................................................................7 n.4

Robinson v. Cattaraugus County,
    147 F.3d 153 (2d Cir. 1998)..............................................................................................9

Shabazz v. Bob Evans Farms, Inc.,
    163 Md. App. 602 (Md. Ct. Spec. App. 2005) .................................................................9

Simon v. Safelite Glass Corp.,
    128 F.3d 68 (2d Cir. 1997)..................................................................................................4

Sines v. Serv. Corp. Int'l
    2006 U.S. Dist. LEXIS 82164 (S.D.N.Y. Nov. 8, 2006)............................................10, n.5

Smith v. Nagai,
    No. 10-CV-8237, 2012 WL 2421740 (S.D.N.Y. 2012).......................................................7

Thompson v. City of N.Y.,
    No. 98-Civ.-4725(GBD), 2002 WL 31760219 (S.D.N.Y. Dec. 9, 2002)......................4 n.3

Ting Yao Lin v. Hayashi Ya Il, Inc.,
    No. 08-CV-6071, 2009 WL 289653 (S.D.N.Y. 2009).........................................................7

Travis v. Gary Community Mental Health Ctr., Inc.,
    921 F.2d 108 (7th Cir. Ind. 1990) .............................................................................10, n.5

Veerman v. Deep Blue Group L.L.C.,
    No. 08 Civ. 5042, 2010 U.S. Dist. LEXIS 117511 (S.D.N.Y. Nov. 3, 2010) .....................8

Virgilio v. City of New York,
    407 F.3d 105 (2d Cir. 2005)............................................................................................ 8-9

**Page**

**RULES AND STATUTES**

42 USC § 1983..............................................................................................................................9

Defendants Michael Cetta, Inc. d/b/a Sparks Steakhouse and Michael Cetta (collectively, "Sparks"), by their attorneys, Duval & Stachenfeld LLP, respectfully submit this reply memorandum of law in further support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiff strains in his Opposition to divert the Court's attention from a basic fact, which is undisputed and dispositive of his remaining claims for "retaliation":  based on Plaintiff's own application and medical records, the Social Security Administration (the "SSA") adjudged Plaintiff unable to work in any capacity on a date before Sparks ever implemented the allegedly "retaliatory" restaurant-wide Rotation Policy.  As a matter of law, to establish a *prima facie* case of retaliation under the FLSA or the NYLL, a plaintiff must prove that he engaged in a protected activity, that that activity was causally related to an allegedly adverse employment action, and that the employment action "disadvantaged" him.  Here, the undisputed timing of the onset of Plaintiff's full disability demonstrates that the subsequent implementation of the Rotation Policy did not and could not disadvantage Plaintiff in any way.  As a matter of law, Sparks could not have demoted, reassigned or terminated Plaintiff or taken any other employment action allegedly adverse to Plaintiff.  Plaintiff cannot now argue or prove to this Court that his prior sworn statements to SSA were lies and that he actually could work and was "disadvantaged" by Sparks Rotation Policy.

Therefore, even if the adoption of a neutral waitstaff Rotation Policy intended to promote fairness in the restaurant among dozens of employees could remotely be construed as retaliatory,

---

[1] Capitalized terms used herein have the meanings set forth in Sparks' Memorandum of Law in Support of its Motion for Summary Judgment, dated January 18, 2013.  Wakim's Memorandum of Law in Opposition to the Motion for Summary Judgment, dated February 19, 2013, is referred to herein as the "Opposition" or "Opp'n."

1

no actionable damages resulted from the purported retaliation, given that Plaintiff could not work in <u>any</u> capacity.  This central and dispositive point is purposely lost amidst the various irrelevant exhibits, affidavits and arguments included with the Opposition.  Try as he might, Plaintiff does not and cannot dispute that he was unable to work as a matter of law at the time of the adoption of the Rotation Policy.  This is incontrovertible, fatal to Plaintiff's claims, and justifies entry of summary judgment in favor of Sparks as a matter of law.

## ARGUMENT

### I. PLAINTIFF'S REPEATED CLAIMS THAT HE WAS READY, WILLING AND ABLE TO WORK AS A RUNNER AT SPARKS ARE BARRED BY THE DOCTRINES OF JUDICIAL ESTOPPEL AND LAW OF THE CASE

#### A. The SSA And This Court Have Already Concluded As A Matter Of Law That Plaintiff Could Not Work As Of September 7, 2009

In an effort to create a question of fact where none exists, Plaintiff argues in the Opposition that he was disadvantaged by the adoption of the Rotation Policy because he was "ready, willing, and, most importantly, able to work as a runner at the time [Sparks] instituted the Rotation Policy."  Opp'n at 13.  Accompanying the Opposition are three "fact" affidavits -- including Plaintiff's own sworn statement -- each asserting as "fact" that Plaintiff was capable of performing the runner position at Sparks.  But as a matter of law, the Court must summarily reject the affidavits and the entirety of Plaintiff's argument that he could perform the essential functions of his job, because the SSA <u>and</u> this Court have already concluded to the contrary.

First, as this Court is well aware, Plaintiff previously made sworn statements to the SSA in connection with his application for full disability benefits claiming that he could <u>not</u> perform the essential functions of his job.  Pastore Decl. Ex. B [Disability Report] ¶ 4(c).  The SSA relied upon and adopted Plaintiff's sworn statements and awarded him full disability benefits -- determining that Plaintiff "became disabled under our rules on September 7, 2009."  Pastore

2

Decl. Ex. A [Notice of Award].  As a result, Plaintiff is judicially estopped from arguing that he was capable of performing the runner position -- or indeed any position -- at any time after September 7, 2009.  Mitchell v. Washingtonville Ctr. Sch. Dist., 190 F.3d 1, 7-8 (2d Cir. 1999) (a plaintiff who, in obtaining disability benefits, makes factual statements to the SSA asserting that he cannot perform the essential elements of his job, is judicially estopped from advancing, for the purposes of litigation, the contrary position).

Second, as this Court has already held in its prior Decision, dated May 17, 2012, on Defendants' Motion for Summary (the "Decision"), to the extent Plaintiff "asserts that he can perform the essential functions of a runner, he is judicially estopped from doing so."  Decision, at 12-13.   The Decision constitutes the law of the case and is binding on the parties. See Liona Corp. v. PCH Assocs. (In re PCH Assocs.), 949 F.2d 585, 592 (2d Cir. N.Y. 1991) ("a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.").  The law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  Id. (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988)).  Accordingly, Plaintiff is estopped from claiming that he was ready, willing and able to work as a runner any time after September 7, 2009.

Despite this, Plaintiff argues that judicial estoppel is inapplicable because Sparks did not rely on Plaintiff's disability when Sparks allegedly denied Plaintiff's accommodation request.  Opp'n at 14-15.  Plaintiff's argument misstates the law.  In this Circuit, detrimental reliance is not an element of judicial estoppel. A.I. Trade Fin. v. Centro Internationale Handelsbank AG, 926 F. Supp. 378, 389 (S.D.N.Y. 1996) ("[T]he Second Circuit omit[s] 'reliance' as an element of judicial estoppel, and there is little support in the caselaw for the proposition that reliance is a

required element of the doctrine in the Second Circuit."); see also Bates v. Long Island R.R. Co., 997 F.2d 1028, 1037 (2d Cir. 1993) (omitting reliance as an element of judicial estoppel); Simon v. Safelite Glass Corp., 128 F.3d 68, 71 (2d Cir. 1997) (same).

Furthermore, whether or not Sparks was aware of Plaintiff's full disability when Sparks implemented the Rotation Policy in mid-September 2009, it is undisputed that Plaintiff knew of his full disability before he made his accommodation request.[2] Despite this, Plaintiff made contrary representations to Sparks and failed to disclose his full disability even after Sparks made a written request for medical records.[3] Plaintiff should not be permitted, on the one hand, to shield his medical condition from Sparks while, on the other hand, assert that Sparks' lack of knowledge concerning that medical condition in September 2009 somehow changes the incontrovertible conclusions of law made by the SSA and this Court. As a matter of fact, Plaintiff never served under the Rotation Policy. As a matter of law, Plaintiff never could have served under the Rotation Policy. Accordingly, Plaintiff cannot state a claim for retaliation.

### B. Plaintiff's Sworn Statements To This Court Expressly Contradict His Prior Sworn Statements To The SSA And Constitute A Fraud Either Upon This Court Or The SSA

In any event, based on his own sworn and express statements to the SSA (accompanied by medical documentation) that he could not perform the essential functions of his job at Sparks,

---

[2] During a visit with Dr. Schwartz on September 14, 2009, Plaintiff informed Dr. Schwartz that the pain associated with physical injuries had worsened and that he had "stopped working as a waiter or in any other work capacity due to exacerbation[]" of these symptoms. Pastore Decl. Ex. H [Schwartz Evaluation], at 1; Pastore Decl. Ex. D [Wakim Tr.], at 86. During this visit, Dr. Schwartz determined that Plaintiff was "total[ly] disabl[ed] from any and all work[.]" Pastore Decl. Ex. H [Schwartz Evaluation], at 2; Pastore Decl. Ex. D [Wakim Tr.], at 90-91. Plaintiff never disclosed this fact -- because it blatantly contradicted Plaintiff's claim of a partial disability.

[3] In response to Plaintiff's request for an accommodation of his claimed partial disability (a claim Plaintiff knew was inconsistent with the findings of Dr. Schwartz), Sparks specifically requested medical records from Plaintiff. Pastore Decl. Ex. J [Kapovic Letter]. Plaintiff never provided any such medical records. Pastore Decl. Ex. D [Wakim Tr.], at 66-67. Plaintiff's suggestion in the Opposition that Sparks had an affirmative duty to seek out Plaintiff's medical records is simply wrong as a matter of law. See, e.g., Thompson v. City of N.Y., No. 98-Civ.-4725(GBD), 2002 WL 31760219, *8 (S.D.N.Y. Dec. 9, 2002) (noting that "if [plaintiff] needed an accommodation, it was her responsibility to provide the necessary medical documentation to defendants.").

4

Plaintiff was adjudged fully disabled by the SSA effective September 7, 2009.  Pastore Decl. Ex. A [Notice of Award], at 1; Pastore Decl. Ex. B [Disability Report] ¶ 4(c); Pastore Decl. Ex. D [Wakim Tr.], at 103-04.  As this Court held in the Decision, Plaintiff "stated unequivocally in his application for SSA benefits that he stopped working on September 7, 2009 '[b]ecause of my condition(s).'  Indeed, the tasks he performed as a runner, which he listed in his Work History Report, are precisely the same tasks that Wakim told SSA he can no longer do."  Decision, at 12 n.4.  Despite this, Plaintiff shamelessly and brazenly seeks to avoid dismissal of his claims by asserting that, contrary to his sworn statements to SSA, Plaintiff was ready, willing, and able to work at the time of the adoption of the Rotation Policy.  Opp'n at 13.  Plaintiff attempts to distort the record by asserting that estoppel should not apply because "[i]n September 2009, Wakim had not yet been found to be disabled."  Opp'n at 14.  Plaintiff is wrong.  It is undisputed that, on September 14, 2009, Plaintiff's physician, Dr. Schwartz, determined that Plaintiff was "total[ly] disab[led]." Pastore Decl. Ex. J [Schwartz Evaluation for September 2009], at 2.

Plaintiff -- who has never disavowed and continues to receive thousands of dollars in federal disability benefits -- makes no effort to reconcile his contradictory sworn statements to the SSA and this Court.  Consequently, Plaintiff is either committing a fraud upon the SSA or upon this Court.  Plaintiff's tactics cannot be countenanced.  At a minimum, therefore, summary judgment must be rendered in favor of Sparks.

## II. PLAINTIFF COULD NOT HAVE BEEN DISADVANTAGED BY THE ADOPTION OF THE ROTATION POLICY AFTER THE ONSET OF HIS FULL DISABILITY AND, THEREFORE, HE HAS NO ACTIONABLE DAMAGES

### A. There Is No Basis For Mental Anguish Damages

Nothing in the Opposition counters the basic and fundamental point that, before the purportedly adverse employment action was even implemented by Sparks, Plaintiff was fully

disabled and legally unable to work in any capacity.  Accordingly, even if Plaintiff can show that he was specifically targeted by the Rotation Policy (which he cannot), Plaintiff cannot show that he sustained any actionable damages -- including mental anguish damages -- as a result.

In an effort to divert the Court from this fundamental issue, Plaintiff claims that he is entitled to mental anguish damages because the alleged retaliation occurred "before [Plaintiff's] January 2010 application for disability benefits."  Opp'n at 16.  This timing is completely irrelevant.  Instead, the timing which is critical and which entitles Sparks to summary judgment is the undisputed date of the onset of Plaintiff's full disability -- September 7, 2009.  Having been adjudged by the SSA to be unable to work as of a date <u>before</u> the Rotation Policy was even implemented, Plaintiff cannot claim that the adoption of the Rotation Policy (which was not specifically targeted to Plaintiff anyway) caused him actionable mental anguish.  Rather, as of September 7, 2009, Plaintiff could not perform his job or any other job.  Therefore, any purported change in his job was legally of no force and effect as to him.

> **B.     The Cases Cited By Plaintiff In Support of His Purported Mental Anguish Claim Have Absolutely No Applicability Here -- As Not One Of Those Cases Involved A Plaintiff Who -- Like Wakim -- Was Adjudged Unable To Work**

In his ongoing effort to distract the Court from the central and dispositive timing at issue here, Plaintiff cites to a series of cases which he claims demonstrate his entitlement to mental anguish damages.  Opp'n at 16-17.  Plaintiff's reliance on these cases is entirely misplaced.  Indeed, even if the FLSA and NYLL allow for mental anguish damages, Plaintiff does not and cannot cite to a single case for the illogical position that a plaintiff alleging retaliation under the FLSA and NYLL was entitled to mental anguish damages for an adverse employment action implemented <u>after</u> the employee was legally unable to work. Rather, the cases cited in the Opposition involve: (1) plaintiffs who were -- as a matter of law -- able to perform the essential

6

function of their job at the time of the purportedly adverse employment action (unlike Plaintiff here); (2) a close temporal proximity between the employer's knowledge of the employee's participation in a protected activity and the adverse employment action (unlike the three years here); and (3) an adverse employment action specifically targeting the plaintiff (unlike the restaurant-wide application of the Rotation Policy here).[4]  See Smith v. Nagai, No. 10-CV-8237, 2012 WL 2421740 (S.D.N.Y. 2012) (awarding $5,000 in damages for mental anguish to restaurant cook who, although legally able to work (unlike Plaintiff), was terminated two days after notifying the Department of Labor of defendant's failure to pay his employees overtime in violation of the FLSA); Ting Yao Lin v. Hayashi Ya Il, Inc., No. 08-CV-6071, 2009 WL 289653 (S.D.N.Y. 2009) (awarding $5,000 in damages for emotional distress to restaurant employees who, although legally able to work (unlike Plaintiff), were terminated one month after complaining about defendant's failure to, among other things, pay overtime); Do Yea Kim v. 167 Nail Plaza, No. 05 CV 8560(GBD), 2008 WL 2676598 (S.D.N.Y. 2008) (upholding award of $34,000 in damages for pain, suffering and mental anguish to nail salon employee who, although legally able to work (unlike Plaintiff), was terminated after asserting her right to a meal break under New York labor laws); Lai v. Eastpoint Int'l, Inc., 99 CIV 2095 (DLC), 2002 WL 265148 (S.D.N.Y. 2002) (awarding $40,181 in damages for emotional distress and out of pocket losses to garment worker who, although legally able to work (unlike Plaintiff), was terminated within three months of filing a lawsuit against defendants seeking to recover unpaid overtime wages and required medical treatment to deal with the psychological problems resulting from defendant's misconduct); Moore v. Freedman, 355 F.3d 558 (6th Cir. 2004) (awarding $40,000 in damages

---

[4] Gomez v. Pellicone, 986 F. Supp. 220, 231 (S.D.N.Y. 1997) (holding plaintiff failed to establish a *prima facie* case of retaliation where the alleged adverse employment action, i.e., plaintiff's termination, "was the result of a personnel action that also impacted two other employees" and occurred a year after the protected activity); Neratko v. Frank, 31 F. Supp. 2d 270, 297 (W.D.N.Y. 1998) ("A plaintiff who does no more than demonstrate that the employer was enforcing a generally applicable policy against him fails to establish an adverse employment action").

7

for mental and emotional distress to city code inspector who, while legally able to work (unlike Plaintiff), was terminated two months after complaining about unequal salaries in violation of the Equal Pay Act); Avitia v. Metropolitan Club, 49 F.3d 1219 (7th Cir. 1995) (awarding $10,500 in damages for emotional distress to a waiter who, although legally able to work (unlike Plaintiff), was terminated four months after complaining about defendants' failure to pay overtime to a Department of Labor auditor).

In this case, Plaintiff was unable to work as a runner, a front waiter, within a rotation system, or in any other capacity before the adoption of the Rotation Policy.  As a matter of law (and logic), therefore, Sparks could not have taken an adverse employment action against him. So, even if mental anguish damages are available generally under FLSA and NYLL, they plainly are not available here (particularly where the employment action applied to nearly fifty other personnel and was adopted a full three years after Plaintiff joined the Wage and Hour Lawsuit).

**C.    Because Plaintiff Is Not Entitled To Compensatory Damages, Plaintiff's Claim For Punitive Damages Must Also Fail**

In the Opposition, Plaintiff makes one last attempt to slip past summary judgment by arguing that the prospect of punitive damages -- however unlikely and unwarranted -- justifies sending this case to trial even in the absence of compensatory damages.  Opp'n at 17-18.  This is simply incorrect as a matter of law.  Plaintiff has not and cannot cite to any case awarding punitive damages under the FLSA or NYLL where there was no accompanying award of compensatory damages.  Under New York law, Plaintiff is not entitled to punitive damages in the absence of compensatory or nominal damages.  Veerman v. Deep Blue Group L.L.C., No. 08 Civ. 5042, 2010 U.S. Dist. LEXIS 117511 (S.D.N.Y. Nov. 3, 2010) ("New York law requires the establishment of a compensatory injury before punitive damages can be awarded."); Virgilio v. City of New York, 407 F.3d 105, 117 (2d Cir. 2005) ("punitive damages . . . cannot be invoked

without some compensatory injury"); Action House v. Koolik, 54 F.3d 1009, 1013 (2d Cir. 1995) ("requir[ing] a finding of actual damages before punitive damages may be awarded").

Plaintiff fails to cite to any applicable law to the contrary. Instead, Plaintiff relies on cases in completely unrelated contexts -- such claims under Section 1983 and Title VII. For example, Plaintiff's reliance on King v. Macri, and Robinson v. Cattaraugus County, is misplaced as both decisions involve Section 1983 claims. 993 F.2d 294 (2d Cir. 1993); 147 F.3d 153 (2d Cir. 1998). Section 1983 claims are readily distinguishable because they concern violations of a plaintiff's constitutional rights under color of state law. 42 USC § 1983. It only stands to reason that punitive damages would be available for constitutional violations committed by governmental entities or officers. Plaintiff ignores this critical distinction and identifies no facts or law which warrant adopting a comparable punitive damage analysis under the FLSA and NYLL.

Further, Plaintiff's reliance on Cush-Crawford v. Adchem Corp., 271 F.3d 352 (2d Cir. N.Y. 2001), a case analyzing a plaintiff's entitlement to punitive damages for a Title VII claim, is equally misplaced. Title VII jurisprudence pertaining to punitive damages is unique and has no application to the FLSA. In particular, the rational for "requiring compensatory damages for a punitive damage award 'does not hold in the Title VII context' as the statutory caps on punitive damages within the statute 'ensure against limitless awards in cases of insubstantial harm.'" Kendel v. Local 17-A United Food & Commer. Workers, 2013 U.S. Dist. LEXIS 10461, 13 (N.D. Ohio Jan. 25, 2013) (citation omitted); see also, Shabazz v. Bob Evans Farms, Inc., 163 Md. App. 602, 642 (Md. Ct. Spec. App. 2005) ("Title VII jurisprudence about punitive damages has developed based on judicial interpretations of language in section 1981a that expressly


allows for recovery of punitive damages"). As the language of the FLSA and NYLL do not provide for punitive damages, Plaintiff's self-serving analogies fail.

Finally, Plaintiffs reliance on <u>Sines v. Serv. Corp. Int'l</u>, and <u>Travis v. Gary Community Mental Health Ctr., Inc.</u>, is wholly misleading as both cases actually involved awards of compensatory damages.[5] Here, Plaintiff has no actionable compensatory damages. Consequently, <u>Sines</u> and <u>Travis</u> have no application here and must be disregarded by the Court.

## **CONCLUSION**

For the foregoing reasons and those set forth in Sparks' moving papers, Sparks respectfully requests summary judgment in its favor on plaintiff's remaining claims.

Dated:  New York, New York
        March 5, 2013

                                        Respectfully submitted,

                                        Duval & Stachenfeld LLP

                By:    //S// Timothy J. Pastore
                          Timothy J. Pastore, Esq.
                          Ella Wolf, Esq.
                          101 Park Avenue, 11th Floor
                          New York, NY 10178
                          Tel. No.:  (212) 883-1700

                          *Attorneys for Defendants*
                          *Michael Cetta, Inc. d/b/a Sparks*
                          *Steakhouse, Inc. and Michael Cetta*

---

[5] 2006 U.S. Dist. LEXIS 82164, at *9 (S.D.N.Y. Nov. 8, 2006) (upholding jury award of punitive damages on the grounds that the parties had stipulated to the amount of compensatory damages and the jury had been informed that if they found liability the court would award damages in the stipulated amount); 921 F.2d 108 (7th Cir. Ind. 1990) (awarding $45,000 in punitive damages and $35,000 in compensatory damages for mental anguish resulting from plaintiff's termination and revocation of her health insurance while she was on leave receiving medical care).